532 A.2d 12

### COMMONWEALTH OF PENNSYLVANIA, BUREAU OF CORRECTIONS, Appellee,

v.

### CITY OF PITTSBURGH, PITTSBURGH CITY COUNCIL, Appellant.

Supreme Court of Pennsylvania.

Argued March 11, 1987.

Decided Oct. 15, 1987.

D.R. Pellegrini, City Sol., Kellen McClendon, Asst. City Sol., Pittsburgh, for appellant.

Thomas F. Halloran, Sr. Deputy Atty. Gen., Kenneth J. Benson, Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

ZAPPALA, Justice.

This is an appeal from an order of the Commonwealth Court, 91 Pa.Cmwlth. 293, 496 A.2d 1361, reversing and remanding a decision of the Allegheny County Court of Common Pleas. The question we are called upon to decide is whether the Appellant met its burden of proof of showing that the placement of a pre-release center for state prisoners in a Pittsburgh neighborhood would pose a substantial threat to the community. We hold that Appellant did not meet that burden, and accordingly, affirm the decision of the Commonwealth Court.

On November 21, 1983, Appellee filed a conditional use application, seeking to use property located at 108–110 Miltenberger Street, Pittsburgh, as a pre-release center for state prisoners. A similar facility had been operated by Appellee at another Pittsburgh location (Ridge Avenue) without incident since 1969; however, because the Ridge Avenue property was being sold, Appellee wished to relo-

cate to the Miltenberger Street site. The Miltenberger property is located in the Soho/Bluff area of Pittsburgh which is zoned a C–3 commercial district. Under Section 993.01(a)(A)(10) of the Pittsburgh Zoning Ordinance, institutional facilities are permitted in C–3 districts as a conditional use.

A hearing was held before the City Planning Commission on January 24, 1984 and February 7, 1984. At that time, persons who objected to the placement of the facility in the neighborhood were allowed to give testimony indicating why they did not want the center in the community. Thereafter, the Commission recommended denial of Appellee's application. In March, 1984, City Council reviewed the Commission's recommendation, and referred the matter back to the Commission requesting that a meeting be held with all of the interested parties in order to resolve the objections to the facility. R. 76a. The Commission rejected that request, however, and City Council then voted to accept the Commission's recommendation and deny Appellee's application. R. 77a.[1]

Appellee appealed City Council's decision to the Court of Common Pleas. That court took no additional evidence and affirmed the denial of the application. Appellee then appealed to the Commonwealth Court, which reversed the decision of the Court of Common Pleas and remanded with the direction that the application for conditional use be granted. Appellant now appeals from that decision.

The basis of the Commonwealth Court's decision was that the objectors to the facility had failed to meet their burden of showing that the facility would pose a substantial threat to the community. That court's scope of review, and ours, is limited to determining whether an abuse of discretion or

1. Justice Papadakos notes in his dissent that no findings or written decision were issued by City Council in support of its decision to deny this application, and thus that there is nothing for the courts to review. A lack of written findings is not a fatal defect in this case, but more importantly, the dissent is raising an issue that has been waived by the parties. *See, North Point Breeze Coalition v. City of Pittsburgh,* 60 Pa.Commw. 298, 305, n. 9, 431 A.2d 398, 401, n. 9 (1981).

error of law has been committed. *See, Lower Merion Township v. Enokay, Inc.*, 427 Pa. 128, 233 A.2d 883 (1967). Only if the findings of City Council are unsupported by substantial evidence may we hold that there has been an abuse of discretion. *See, Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983).

A conditional use is one which, under the Pittsburgh Zoning Ordinance, must be approved by City Council. More specifically, the ordinance reads:

(a) Conditional Uses Permitted by Council Approval. The uses named in this category are in general those of a public or semi-public character, deemed to be essential and desirable for the general convenience and welfare, and because of the nature of the use and/or its relationship to the overall plan, require the exercise of planning judgment on location and site plan. Specific conditions to be met are listed as minimum requirements.

A. Location and specific requirements. The uses listed hereunder and the establishment or enlargement thereof may be permitted in the districts herein and previously designated, by Council, when the specific conditions for approval have been met, after a public hearing and recommendation of the Commission.

Pittsburgh Zoning Ordinance, Chapter 993.01(a)(A).

An applicant for a conditional use must prove that the standards set forth in the zoning ordinance were met. *Greensburg City Planning Commission v. Threshold, Inc.*, 12 Pa.Commw. 104, 315 A.2d 311 (1974). After the applicant has met those standards, to defeat the application evidence must be produced showing that the proposed use would pose a substantial threat to the community. *Susquehanna Township Board of Commissioner v. Hardee's Food Systems, Inc.*, 59 Pa.Commw. 479, 430 A.2d 367 (1981). If the evidence does not demonstrate a substantial threat to the community, the conditional use application should be granted. *Id.*

■ Appellant's principal argument is that the objectors to the pre-release facility *did* show by substantial evidence that relocating the pre-release center to Miltenberger Street would pose a threat to the community and thus, that no abuse of discretion by City Council occurred. A review of the record, however, shows that the Commonwealth Court's conclusion to the contrary was correct.

"Substantial evidence" is "relevant evidence as a reasonable mind might accept to support a conclusion." *Valley View Civic Association*, 501 Pa. at 555, 462 A.2d at 640 (citations omitted). The evidence presented by the objectors consisted of testimony of various residents of the Soho/Bluff area of Pittsburgh. The testimony showed that many of the residents perceived that the addition of the center to the neighborhood would ruin the neighborhood for various reasons. R. 26a–28a. For example, there were statements made concerning the high crime rate in the area, the number of bars in the area, and the existence of a house of prostitution in the area. There was also concern voiced about the numerous elderly and female residents in the area. Finally, concern over the effect on property values which would be caused by the center was expressed. The testimony of the neighborhood's residents, however, was not substantiated by facts but was no more than their bald assertions, personal opinions, and perceptions of the pre-release center and the area. They did not present any studies, police records, property valuations or any type of substantive evidence upon which their fears were based, which would lead a reasonable mind to conclude that the facility would be detrimental to the community's general welfare. Although it had ample opportunity to do so at prior stages of these proceedings, the City, for whatever reason, failed to introduce any evidence to bolster the claims voiced by the objectors.

■ Appellant argues that Appellee should shoulder the burden of showing that the center is not a detriment to the community in this case. In support of this conclusion, the Appellant relies on *Texas Department of Community Af-*

*fairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *Burdine* is a case brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq. Appellant finds in that case a complicated scheme of shifting of burdens of proof between the parties and urges that the same should be applied in the instant case. Appellant does not explain why the burdens of persuasion in a federal sex discrimination case have any relevance to zoning, and for this reason alone we are unpersuaded that *Burdine*, even were Appellant's questionable reading correct, should have any effect on the disposition of this case.

More importantly, a reading of the zoning ordinance itself and a review of the relevant law of this Commonwealth convinces us that once the applicant for a conditional use has met the standards of the statute, any objectors, including the City, have the burden of proving that the use will harm the community.

Appellant notes that in *Bray v. Zoning Board of Adjustment*, 48 Pa.Commw. 523, 410 A.2d 909 (1980) the applicants for a special exception under the Philadelphia Zoning Ordinance had the evidence production burden and persuasion burden as to detriment to health, safety and general welfare. In *Bray*, however, the court recognized that while normally the objectors carry the burden of showing the proposal to be detrimental to public health, safety and welfare, the burden can be changed by the language of the ordinance. *Id.* The Philadelphia Zoning Ordinance involved in *Bray* had accomplished this, but that court noted:

[A]n applicant, by showing compliance with the specific requirements of the ordinance, identifies the proposal as one which the local legislation expressly designates to be appropriate in the district and therefore presumptively consistent with the promotion of health, safety and general welfare; hence it is logical that, as noted below, the Pennsylvania decisions have placed on the objectors the 'burden' of showing the proposal to be detrimental to public health, safety and welfare.

*Id.* at 527, 410 A.2d at 911; *citing Borden Appeal,* 369 Pa. 517, 87 A.2d 465 (1952); *Root v. Erie Zoning Board of Appeals,* 180 Pa.Superior Ct. 38, 118 A.2d 297 (1955); *Zoning Hearing Board v. Konyk,* 5 Pa.Commw.Ct. 466, 470–71, 290 A.2d 715, 718 (1972). Later cases have reaffirmed this principle: *See, Susquehanna Township Board of Commissioners, supra; Foster Grading Company v. Venango Township Zoning Hearing Board,* 49 Pa.Commw. 1, 412 A.2d 647 (1980); *Greensburg City Planning Commission, supra.*

■ Appellant also argues that the Commonwealth Court erred in relying upon cases involving innocuous uses of property. This argument is based on a flawed premise; that is, the assumption that by its nature a pre-release center is a detriment to a neighborhood. Such a conclusion is unsupported in view of the fact that the Ridge Avenue facility operated without any problems since 1969. R. 54a. It is also clear that "no one [questioned] the quality of the program, or the excellent track record of the Community Service Division ...". R. 67a. Accordingly, for Appellant to now assert that the pre-release facility is *per se* a detriment to the community is unfounded. Appellant failing to show by any substantial evidence that the facility will be such a detriment, we affirm the judgment of the Commonwealth Court.

Affirmed.

LARSEN, J., files a dissenting opinion in which McDERMOTT, J., joined.

PAPADAKOS, J., files a dissenting opinion.

LARSEN, Justice, dissenting.

I dissent.

The majority requires objectors to produce "studies, police records, property valuations or any type of substantive evidence ... which would lead a reasonable mind to conclude that the facility would be detrimental to the community's general welfare." Maj. op. at 80. The majority,

realizing that this type of evidence is expensive, also states that the City could have provided such evidence in this case, but does not indicate procedurally how this could be accomplished. Since the City, at the time public hearings are conducted and evidence is received, functions in a judicial capacity, the City would have been precluded from simultaneously presenting evidence. Thus, the burden has to rest upon neighborhood residents who are opposed to the conditional use to provide the kind of cumulative and unnecessary evidence required by the majority. In addition, the majority has exceeded the proper scope of review, and, in weighing the evidence, has, in effect, conducted a de novo hearing in the matter.

In this case, appellee sought to open a pre-release center for 24 convicted male felons (with convictions for the full range of felonies, including rape, robbery, burglary and manslaughter). Appellee proved that the standards set forth in the zoning ordinance were met, during hearings before the City Planning Commission.

To meet their burden, neighborhood residents, speaking from personal knowledge, reported that: (1) muggings on residents' doorsteps were frequent; (2) the facility would be located near five bars, a State Liquor Store and a house of prostitution; (3) many female and elderly residents considered themselves to be "prisoners within their own homes" due to the local incidence of burglary, rape, murder and drug and alcohol abuse; and (4) the neighborhood was increasing in population and residents were actively seeking to attract investors to develop the area into a stable community. I would hold that such evidence on the part of the objectors is sufficient to prove detriment to the general welfare of the community and impediment to development of the surrounding property.

Appellee, responding to concerns about security at the hearings, stated only that a trained "house manager" would be available 24 hours a day. Reproduced Record at 24a. In addition, contrary to what the majority found regarding this center's operation at another location, appellee admitted

that one incident since 1969 had required outside help "to control the situation." *Id.* Appellee alleged that other centers operate safely in residential high crime areas but did not produce documentary evidence to support this allegation. Hence, Appellee did not rebut appellant's evidence.

For this Court to foist this pre-release center upon the residents of the Soho/Bluff area of the City of Pittsburgh (sensitively described as a community in a " 'fragile' state of transition" by the Court of Common Pleas) is particularly repugnant in that this Court refused recently to recognize a cause of action in tort against a Youth Study Center and the political entities owning and operating it in an allegedly negligent manner for the criminal activity of youths who had escaped therefrom. *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (Larsen, J., dissenting). With one hand we introduce a potential danger into the community; with the other, we take away any recourse for injuries caused by that danger.

By its decision today, the majority guarantees that facilities like the pre-release center herein will never be placed in wealthy communities. This is so because the majority places a burden upon objectors to conditional uses of producing cumulative and unnecessary evidence that none but the well-to-do could possibly afford.

Accordingly, I would reverse the judgment of the Commonwealth Court and affirm the Order of the Court of Common Pleas of Allegheny County.

McDERMOTT, J., joins in this dissenting opinion.

PAPADAKOS, Justice, dissenting.

I must respectfully dissent because, in my view, the issues raised by the parties are prematurely considered. The City Council of the City of Pittsburgh, *in considering applications for conditional uses,* is required to comply with the formalities of the Local Agency Law, 2 Pa.C.S.A. § 553,[1] and enter an adjudication in compliance with § 555[2]

---

1. 2 Pa.C.S.A. § 553 provides:

of said law. The Local Agency Law is applicable in such a case because, when the City Council acts on a conditional use application, Council is acting in an administrative, not a legislative, capacity. It has been held that the act of approving or disapproving a conditional use application establishes no rule of general application, as the passage of an ordinance does, and that City Council essentially is only approving or rejecting the issuance of a permit, nothing more. *See, North Point Breeze Coalition v. City of Pittsburgh*, 60 Pa.Commonwealth Ct. 298, 431 A.2d 398 (1981), which, I believe, sets out the law properly.

Such an administrative act is reviewable under the Local Agency Law which effectuates the clear constitutional intent that parties aggrieved by an administrative adjudication be provided the same opportunity to pursue relief as those aggrieved by a judicial determination.[3] *North Point Breeze, supra.* There is little question that Pittsburgh's City Council, like its Zoning Board of Adjustment, is a local agency when it acts administratively, and that a resolution disposing of a conditional use application is an "adjudica-

**§ 553. Hearing and record**
No adjudication of a local agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard. All testimony may be stenographically recorded and a full and complete record may be kept of the proceedings. In the event all testimony is not stenographically recorded and a full and complete record of the proceedings is not provided by the local agency, such testimony shall be stenographically recorded and a full and complete record of the proceedings shall be kept at the request of any party agreeing to pay the costs thereof.
1978, April 28, P.L. 202, No. 53, § 5, effective June 27, 1978.

2. 2 Pa.C.S.A. § 555 provides:
**§ 555. Contents and service of adjudications**
All adjudications of a local agency shall be in writing, shall contain findings and the reasons for the adjudication, and shall be served upon all parties or their counsel personally, or by mail.
1978, April 28, P.L. 202, No. 53, § 5, effective June 27, 1978.

3. Article V, Section 9, of the Pennsylvania Constitution provides in pertinent part:
There shall be a right of appeal ... from an administrative agency to a court of record or to an appellate court, the selection of such court to be provided by law.

tion" within the meaning of the Local Agency Law. 2 Pa.C.S.A. § 101.

Among the formalities with which a local agency must comply is the requirement that it provide a hearing, notice thereof to any party, and an opportunity to be heard. 2 Pa.C.S.A. § 553. The local agency must then issue its adjudication in writing and support it with findings and reasons. 2 Pa.C.S.A. § 555. City Council has not done so in this case and, until it supplies the required hearing and adjudication, there is simply nothing for the courts to review.

As correctly noted by the trial court, the Commonwealth Court and the Majority, the scope of review from the grant or denial of a conditional use request, under the Pittsburgh Zoning Ordinance, is governed by 2 Pa.C.S.A. § 754 [4] and is based on a review of the record as compiled by the local agency and a review of the findings made by the local agency to determine whether the findings are supported by substantial evidence. *See, Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983); *North Point Breeze Coalition v. City of Pittsburgh, supra.*

4.  2 Pa.C.S.A. § 754 provides:
    **§ 754. Disposition of appeal**
       (a) **Incomplete record.**—In the event a full and complete record of the proceedings before the local agency was not made, the court may hear the appeal de novo, or may remand the proceedings to the agency for the purpose of making a full and complete record or for further disposition in accordance with the order of the court.
       (b) **Complete record.**—In the event a full and complete record of the proceedings before the local agency was made, the court shall hear the appeal without a jury on the record certified by the agency. After hearing the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter B of Chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. If the adjudication is not affirmed, the court may enter any order authorized by 42 Pa.C.S. § 706 (relating to disposition of appeals.)

I am hardpressed, from my review of this record, to find that any hearing was conducted by the local agency, that any notice of a hearing was given to any party in interest, that any opportunity to be heard in a formal hearing before the local agency was given to any party in interest, and that *any findings or written decision* was issued by City Council in support of its decision to deny this application. At the City Council meeting of April 30, 1984, a motion was made and seconded to pass the following resolution:

Resolution approving a conditional use under Section 993.01(a)A–10 of the Pittsburgh Code, Title Nine, Zoning Article V, Chapter 993, for authorization to occupy the existing structure located at 108–110 Miltenberger Street as an Institutional Facility to be used by the Pennsylvania Bureau of Corrections Community Services Division, as a Pre-Release Center for 24 convicted adult male State Prisoners, with supervision, on property zoned "C3" Commercial District, 1st Ward.

The motion was defeated with eight council members voting in the negative and zero voting in the affirmative. This vote represents the "adjudication" which triggers the present review under the Local Agency Law. The adjudication is not accompanied, however, by any findings of fact or reasons or even a record which *Council* compiled or adopted as its own at a hearing before it. At each level of review, an *assumption* has been made that City Council has acted based upon the recommendation of the City Planning Commission, but nowhere in the record is it indicated that City Council read this record, adopted the record and recommendations for its own, or that it relied on other reasons for denying the application. Nor is there any evidence that City Council appointed the City Planning Commission to conduct the hearing required by the Local Agency Law, 2 Pa.C.S.A. § 553.

While I agree in the Majority's legal analysis of which party bears the burden of establishing that a proposed use would be detrimental to the public interest, I feel that such an inquiry is premature.

In its analysis of this case, the Majority has reviewed, and referred to, the record compiled before the City Planning Commission and has determined that the evidence presented by the objectors to the Planning Commission did not rise to the level of substantial evidence to support their burden. Nowhere in statutory or case law do I find that objectors must meet this burden before a Planning Commission that has no adjudicative powers, but can only recommend to the governing body.

The Majority, today, determines that the Supreme Court of Pennsylvania will henceforth review the *recommendations* of a Planning Commission which has no adjudicative powers to determine whether substantial evidence exists to support the *recommendations.* Gone are the days when due process required that every aggrieved party whose property rights were implicated was entitled to a hearing, *after notice,* before an adjudicative body.

In this case, there has never been a hearing before an adjudicative body. The only "hearing" held was before the Planning Commission, a non-adjudicative body which can only make recommendations. No hearing was held before City Council which was acting as a Zoning Board and not a legislative body. The parties were not given notice of a *hearing* before the City Council, acting as a Zoning Board. The parties were not afforded their constitutional right to be heard by City Council, acting as a Zoning Board, an adjudicative body as contemplated in the Local Agency Law.

I fear my brethren have short-circuited the system and given their imprimatur upon the denial of due process by the Pittsburgh City Council to all aggrieved property owners in conditional use applications. Henceforth, all Zoning Boards in Pennsylvania may avoid hearings and merely rely upon the recommendations of their municipal planning commissions where provided as an initial step in the zoning process. All this in the name of waiver. It seems the parties never raised the total lack of compliance with the Local Agency Law and have deprived themselves of the

right to be heard. Perhaps the Majority is correct. I believe that the agency has an affirmative duty to provide a hearing, and notice thereof, as mandated by the Local Agency Law and, until it does so, there is nothing for any Court to review.

I would remand to City Council for a full hearing, with proper notice, and an opportunity for any objectors to present their evidence to the agency.