597 A.2d 219

**AMERIKOHL MINING INC., Appellant,**

v.

**The ZONING HEARING BOARD OF WHARTON TOWNSHIP and Wharton Township and Deer Lake Improvement Association, Inc., Appellees.**

Commonwealth Court of Pennsylvania.

Argued March 7, 1991.

Decided Aug. 29, 1991.

250

Stanley R. Geary, for appellant.

Steve P. Leskinen, for appellees.

Before DOYLE and SMITH, JJ., and BARBIERI, Senior Judge.

DOYLE, Judge.

Amerikohl Mining, Inc. (Amerikohl) appeals from an order of the Court of Common Pleas of Fayette County which affirmed the decision of the Zoning Hearing Board of Wharton Township (Board) to deny Amerikohl's application for a special exception.

The pertinent facts are as follows: On November 16, 1989, Amerikohl filed with the Board a petition for a special exception to conduct surface coal mining operations on a tract of land located in an area of Wharton Township zoned A–1 (Agricultural Forest). Under the Wharton Township Zoning Ordinance (Ordinance),[1] surface coal mining operations are a permitted land use in A–1 districts upon the issuance of a special exception.

The proposed mine site is located adjacent to an area which is zoned R–1 (Residential Single Family Dwelling) in

1. Ordinance No. 3 of 1981.

which is located a residential community known as Deer Lake Park (Deer Lake). The community surrounds a man-made lake contained by an earthen dam. It is approximately 955 feet from the closest area where coal will be extracted to the nearest house in the Deer Lake community; the farthest distance from the mine area to a Deer Lake community home is approximately 9,500 to 10,000 feet.

Hearings were held before the Board during which the Deer Lake Improvement Association (Association)[2] participated. On May 23, 1990, the Board issued a written decision, including findings of fact and conclusions of law, denying the special exception.

Amerikohl filed an appeal from the Board's decision to the Court of Common Pleas of Fayette County. The Association and Wharton Township intervened. Amerikohl filed, *inter alia*, a Motion for Leave to Present Additional Evidence concerning the testimony of one of the witnesses who opposed the special exception at the Board hearings, which is not before the Court at this time, and also additional evidence regarding the appearance of bias of two of the three Board members. By an order dated July 19, 1990, the common pleas court granted Amerikohl's motion in part and denied it in part. The order granted Amerikohl leave to present evidence concerning the appearance of bias of the two Board members only and a hearing thereon was held on August 30, 1990. All parties *stipulated* that the hearing was for the sole purpose of taking evidence of bias and would not require the court to decide the case de novo. Immediately following that hearing, the Court heard arguments on the merits of Amerikohl's appeal.

On October 9, 1990, the lower court issued an opinion and order which affirmed the Board's denial of Amerikohl's special exception and dismissed Amerikohl's appeal. Appeal to this Court followed.

 Preliminarily, we must determine our standard of review because Amerikohl's first two allegations of error

2. The Association is an organization composed of 280 property owners in Deer Lake.

concern actions of the *trial court* rather than the Board, and we will review these issues to determine if the trial court committed an abuse of discretion or an error of law. *See Department of Transportation, Bureau of Motor Licensing v. Monaghan,* 115 Pa.Commonwealth Ct. 248, 539 A.2d 940 (1988). In the next succeeding three arguments, Amerikohl alleges that the *Board* erred.

It is now well established in Pennsylvania law that where the common pleas court receives no additional evidence in an appeal from a decision of a zoning hearing board, our scope of review is limited to a determination of whether a *zoning board* committed an abuse of discretion or an error of law. *Board of Supervisors of Upper Southampton Township v. Zoning Hearing Board of Upper Southampton Township,* 124 Pa.Commonwealth Ct. 103, 555 A.2d 256 (1989).

Amerikohl initially argues that the trial court was required by Section 1005–A of the Pennsylvania Municipalities Planning Code (MPC)[3] to make its own findings of fact based on the record before the Board after the court had received the additional evidence on the appearance of bias. Amerikohl acknowledges that, at the hearing, it stipulated that the taking of this evidence would not require the court

3. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 11005–A. Section 1005–A was added to the Act by Section 101 of the Act of December 21, 1988, P.L. 1329. Section 1005–A provides:

If, upon motion, it is shown that proper consideration of the land use appeal requires the presentation of additional evidence, a judge of the court may hold a hearing to receive additional evidence, may remand the case to the body, agency or officer whose decision or order has been brought up for review, or may refer the case to a referee to receive additional evidence.... If the record below includes findings of fact made by the governing body, board or agency whose decision or action is brought up for review and the court does not take additional evidence or appoint a referee to take additional evidence, the findings of the governing body, board or agency shall not be disturbed by the court if supported by substantial evidence. If the record does not include findings of fact or if additional evidence is taken by the court or by a referee, the court shall make its own findings of fact based on the record below as supplemented by the additional evidence, if any.

to hear the case de novo but Amerikohl now argues that it was compelled to make this stipulation in order to present any evidence on bias; a Hobson's choice. It argues that it was an abuse of discretion for the court to compel Amerikohl to make such an agreement.

We agree with Amerikohl that the trial court committed an abuse of discretion in requiring it, before the court would accept evidence on the bias issue, to stipulate that the taking of additional evidence would not change the standard of review.[4] However, we hold that this error is of no consequence because the evidence that was taken before

4. In making a determination that the trial court *required* Amerikohl to stipulate that by accepting additional evidence it would not change the Court's scope of review, we are giving Amerikohl the benefit of the doubt. The notes of testimony reveal that the introduction of the additional evidence was first met with objections from both counsel for the Association and counsel for Wharton Township, whereupon the following colloquy took place:

> THE COURT: As I indicated I am not yet in the position to determine whether or not the findings of the Zoning Hearing Board were and are supported by substantial evidence. And it is not my intent to have the evidence as to bias in any way affect those findings until I make such a determination. Mr. Geary [counsel for Amerikohl], is it your understanding that the only purpose of this hearing is as to the issue of bias and that until the Court rules as to the findings of the Zoning Hearing Board that we are not, for that purpose, taking additional testimony?
> MR. GEARY: Your Honor, I understand that the Court is not taking additional testimony with respect to the substance and merit issues in the appeal, but I think that the question of whether or not the testimony on bias changes the Court's standard of review is not totally clear and I would not concede today that by taking that evidence, you are not changing the standard of review. I believe, in fact I would assert, that by taking additional evidence on any issues, changes the standard of review and the Court would have to then make its own finding of facts.
> THE COURT: Well, if that is your position, Mr. Geary, I intend, at this time, to hand down an Order that will preclude any testimony as to bias and review the record and make a determination as to whether or not the Zoning Hearing Board's findings are supported by substantial evidence. And if they are not, then at that time, hold a hearing. So if that is your position, I intend to hand down that Order at this time.
> MR. GEARY: If I could consult with my client?
> THE COURT: Certainly.
> (At this time, Mr. Geary confers with his client.)
> MR. GEARY: Thank you for the opportunity to discuss that.

the trial court would not compel the trial court to hear and decide anew the merits of the underlying case. The evidence admitted by the trial court consisted of the following: Testimony of the president of Amerikohl as to the location of the home of one Board member and of the home of the parents-in-law of another Board member; a topographic map of the mine site and the general vicinity, including the above mentioned homes; and the opinion of the president of Amerikohl as to the effect of the proposed mine on the value of the two properties in question. None of this evidence goes to the merits of Amerikohl's application for a special exception. All of the additional evidence, as was stipulated, concerned only the issue of bias, did not relate to any zoning or planning question in the case, nor did it relate to any issue considered by the Board. We therefore hold that the evidence of bias offered by Amerikohl is not the type of additional evidence that requires the trial court under Section 1005–A of the MPC to make its own findings of fact on the underlying merits. *See Marple Township Appeal,* 440 Pa. 508, 269 A.2d 699 (1970); *Board of Supervisors of Greene Township v. Kuhl,* 112 Pa.Commonwealth Ct. 624, 536 A.2d 836 (1988), *petition for allowance of appeal denied,* 520 Pa. 579, 549 A.2d 139 (1988).

> THE COURT: Certainly.
> MR. GEARY: Your Honor, it is my understanding that what the Court has asked us to agree to is that the taking of evidence of bias will not change the standard of review, will not require the Court to decide this case de novo and on the merits. *And we are willing to make that stipulation although we, with the reservation of course, that if the Court finds that there is bias, we are going to ask the Court to vacate the decision below, and then decide the case de novo, based solely on the finding that there was bias.*

(R.R. 412(a)–414(a)) (emphasis added). It would have been perfectly proper and judicially sound for the trial court to have denied Amerikohl's application for additional evidence because the alleged bias of the Board members was either known to Amerikohl or was easily discoverable before the Board issued its final decision on May 23, 1990. As such, the trial court should have considered the issue waived as not having been raised before the Board. *Danwell Corp. v. Zoning Hearing Board of Plymouth Township,* 115 Pa.Commonwealth Ct. 174, 540 A.2d 588 (1988), *petition for allowance of appeal denied,* 520 Pa. 620, 554 A.2d 511 (1988); *see also Lower Providence Township v. Nagle,* 79 Pa.Commonwealth Ct. 322, 469 A.2d 338 (1984).

Second, Amerikohl contends that the trial court erred in failing to invalidate the decision of the Board on the basis of the appearance of bias of two Board members. Amerikohl's sole evidence was that the residence of one Board member and the residence of another Board's member's parents-in-law are sufficiently close to the location of the proposed strip mining site to create an appearance of bias. Amerikohl further contends that to establish grounds for disqualification for bias, it need only show an appearance of bias and not the actual bias that the court required.

As a general rule, a municipal officer should disqualify himself from any proceeding in which he has a personal or pecuniary interest that is immediate or direct. *Danwell Corp. v. Zoning Hearing Board of Plymouth Township,* 115 Pa.Commonwealth Ct. 174, 540 A.2d 588 (1988), *petition for allowance of appeal denied,* 520 Pa. 620, 554 A.2d 511 (1988). The trial court, applying the standards articulated in *Danwell,* found that there was no evidence that either Board member had an immediate or direct personal or pecuniary interest in the subject matter of the application, and there was nothing in the record to indicate that either Board member conducted himself in a biased or prejudicial manner. We, therefore, agree with the trial court that Amerikohl's evidence, without more, is insufficient to establish grounds for disqualification of either Board member.

Amerikohl further contends that Section 3(j) of the Act of October 4, 1978, P.L. 883, *as amended,* (Ethics Act), 65 P.S. § 403(j), requires public officials, such as members of a zoning hearing board, to abstain from voting and to disclose the nature of any conflict of interest before voting. Section 2 of the Ethics Act, 65 P.S. § 402, excludes from the definition of "conflict" or "conflict of interest,"

> an action having a de minimis economic impact or which affects to the same degree a class consisting of the general public or a subclass consisting of an industry, occupation or other group which includes the public official or public employee, a member of his immediate family

or a business with which he or a member of his immediate family is associated.

Because the evidence presented by Amerikohl reveals an impact on the Board members no greater than that of the general public, the Board members were not required by Section 2 to take the actions suggested by Amerikohl.

Amerikohl's remaining arguments concern allegations of error committed by the Board. As we have previously stated, we will review these issues to determine whether the Board committed an abuse of discretion or an error of law.

 Amerikohl argues in this regard that the objectors to the application for the special exception failed to prove with a high degree of probability that the surface coal mining operation will be more injurious to the public welfare than would normally be expected of a surface mining operation.

The law is well settled that an applicant for a special exception initially must meet only the burden of establishing that the proposed use complies with the specific requirements of the ordinance which expressly governs the grant of a special exception. *Bray v. Zoning Board of Adjustment*, 48 Pa.Commonwealth Ct. 523, 410 A.2d 909 (1980). Where, as here, that burden is satisfied, then any objectors to the proposed use must, to be successful, satisfy their burden of showing that the proposed use is a detriment to public health, safety and welfare. *Danwell*. The objectors must show that the impact would be greater than would normally be expected from that type of use and that this use would pose a substantial threat to the health, safety and welfare of the community. *Abbey v. Zoning Hearing Board of the Borough of East Stroudsburg*, 126 Pa.Commonwealth Ct. 235, 559 A.2d 107 (1989).

In its resolution denying Amerikohl's application, the Board made the following pertinent findings of fact:

16. [T]he vehicular traffic which will be generated by the proposed mine as proposed by the Applicant, despite the precautionary signs, radios, and mirrors which are to

be provided by Applicant, will create undue congestion and hazards prejudicial to the general neighborhood.

17. [D]espite the proposed mining away from Deer Lake in the summer as proposed by the Applicant, that substantial dust and particulates will be generated by the proposed mine; that same will migrate to the Deer Lake area, increase the levels of air pollution that will be trapped in the valley and in the homes therein, and that same will have a negative effect on the health and safety of the adjoining area.

18. [T]he noise levels created by the proposed mine will substantially increase over those currently existing, and that such increase will disrupt the quiet and solitude of the adjacent residential community in contravention of the Goals and Objectives of the Zoning Ordinance as contained in Article III, Section 301(b).

19. [T]he effects of the proposed mine will, with some probability, induce health related difficulties in the Deer Lake area and will adversely affect the health of the residents on adjacent properties and in the general neighborhood.

20. [B]lasting may have an effect on the structural integrity of the Deer Lake dam and that such effect may not manifest itself until after the mining has ceased. [If] such is the case, the insurance certificate as provided by Amerikohl will not cover the damage as same in (sic) issued on a claims made basis and not an occurrence basis. Further, there is no indication that the amount of the insurance is sufficient to cover any potential damage to the dam.

21. [T]he mining operation will tend to lower property values in the area.

22. [T]he safety of the adjoining residents, particularly children and young adults will be adversely affected.

23. [T]he mining permit may have been issued based upon faulty information and that a significant probability of water pollution will be present thereby presenting a

health hazard to residents and workers on adjacent properties.

Section 908 of the Ordinance requires the Board to consider, *inter alia,* the following conditions and guiding principles when granting a special exception:

d. Such use shall be found by the Board to be in harmony with the general purpose and intent of this Ordinance.

e. Such use shall not adversely affect the character of the District, nor the conservation of property values, nor the health and safety of residents or workers on adjacent properties and in general neighborhood.

f. Such use shall be such appropriate size and so located and laid out in relation to its access streets that vehicular and pedestrian traffic to and from such use will not create undue congestion or hazards prejudicial to the general neighborhood.

In applying the above standards to the findings of fact, the Board concluded that:

3. The use applied for is not in harmony with the general purposes and intent of the Ordinance because of its effect on the adjacent R–1 District as well as the general neighborhood. The evidence which indicates that the proposed use will increase substantially noise, air and water pollution, serious health and traffic hazards, and potential blasting damage to residences, water supplies, and the Deer Lake dam is not in harmony with the intent of the Ordinance as set forth in its goals and objectives as set forth in Section 301(b).[5]

4. The use applied for will adversely affect the health and safety of residents on adjacent properties and in the general neighborhood by reason of the increased noise, air and water pollution, serious health and traffic hazards, potential blasting damage to residences, water supplies and the Deer Lake dam.

5. Section 301(b) provides that one of the goals of the Ordinance is "[t]o preserve the essentially rural nature of the Township."

■ It is clear that Section 908 of the Ordinance authorizes the issuance of a special exception only when the health and safety of residents on adjacent properties will not be adversely affected. The Board in this case found that the proposed use would have such an adverse impact. Because the ordinance specifically requires consideration of the impact upon adjacent property and the neighborhood in general (which may in fact, as here, be located in a different zoning district), we hold that the Board had the authority to consider the impact of the *location* of a use permitted by special exception within a permitted district on adjacent areas outside the permitted use district. Further, because of the proposed mine's proximity to the residential community and the presence of the dam nearby, we therefore conclude, on the facts of this case, that the Board did not err in denying the special exception to Amerikohl because of the effects of a hazardous use on a contiguous residential community.

We find distinguishable on their facts cases in which objectors to special exceptions have failed to demonstrate a substantial threat to the health, welfare and safety of the community. *Abbey,* 126 Pa.Commonwealth Ct. at 242, 559 A.2d at 110–11 (testimony from objectors of their concern that the location of a "waste-to-energy" and recycling facility would be close to schools and hospitals and petition opposing the facility signed by 700 citizens insufficient to establish substantial injury); *Moyer's Landfill, Inc. v. Zoning Hearing Board of Lower Providence Township,* 69 Pa.Commonwealth Ct. 47, 450 A.2d 273 (1982), *cert. denied,* 471 U.S. 1101, 105 S.Ct. 2325, 85 L.Ed.2d 843 (1985) (testimony of occasional adverse effects of existing landfill insufficient evidence to deny special exception for landfill at adjacent property); *Bureau of Corrections v. City of Pittsburgh,* 516 Pa. 75, 532 A.2d 12 (1987) (objectors to facility authorized as a conditional use did not present any studies, police records, property valuations or any type of substantive evidence to support adverse impact on community).

■ Amerikohl next argues that the necessary findings of fact were not supported by substantial evidence. Specifically, Amerikohl challenges the basis for the findings pertaining to traffic, dust and particulates, noise, and blasting. Amerikohl also challenges the qualifications of a certain witness for the objectors to render opinions.

A review of the record reveals substantial evidence to support the findings Amerikohl challenges. Witnesses who testified on behalf of the objectors included, *inter alia,* the following: An engineer who testified that the fine powdered dust generated by a strip mine is harmful to the respiratory system; a mechanical engineer who testified that the the strip mine would cause noise levels which would be, at bare minimum, "4 to 5 to 6 times louder than the prevailing noise"; a consulting environmental geologist who testified that "[s]urface mining as proposed by Amerikohl would pollute surface and groundwater in the area of the mine and downstream in Meadow Run"; a realtor and real estate appraiser who testified that if the strip mine is permitted, property values in the community would experience a twelve percent loss of value in the first year, ten percent in the second year and eight percent in the third year of operation; a structural engineer who testified, based on information received from the environmental geologist, that tremors resulting from the blasting at the mine site which reach the dam foundation may be enough to cause a leak to develop either during the mine operation or at some future time; and, a physician who testified as to the medical effects of stress, noise pollution and air pollution which would result from the strip mine.

Thus, unlike *Bureau of Corrections,* this was not a situation where the only witnesses to oppose the use proposed were neighbors who merely expressed personal opinions or bald assertions unsupported by facts. In its findings of fact, the board reviewed the testimony of these witnesses and those of Amerikohl and found the witnesses for the objectors to be credible. Determinations as to the credibility of witnesses and the weight to be given to

evidence are matters left solely to the Board in the perform-
ance of its fact-finding role. *Borough of Youngsville v.
Zoning Hearing Board of the Borough of Youngsville,* 69
Pa.Commonwealth Ct. 282, 450 A.2d 1086 (1982).

■ Finally, Amerikohl argues that the Board is
preempted by Section 17.1 of the Surface Mining Conserva-
tion and Reclamation Act[6] from considering whether the
proposed mine will adversely impact air or water quality or
whether it will cause damage from blasting. Amerikohl
maintains that the authority of the Board is limited by
Section 17.1 to traditional zoning regulations such as limita-
tions on the type of activities which are permitted in certain
districts. Section 17.1 provides:

> Except with respect to ordinances adopted pursuant to
> the act of July 31, 1968 ... known as the "Pennsylvania
> Municipalities Planning Code," all local ordinances and
> enactments purporting to regulate surface mining are
> hereby superseded. The Commonwealth by this enact-
> ment hereby preempts the regulation of surface mining
> as herein defined.

Section 604 of the MPC, 53 P.S. § 10604, authorizes a
municipality in enacting a zoning ordinance to design provi-
sions in order to promote adequate light and air and to
adopt provisions designed to prevent loss of health, life or
property from flood. The ordinance in the instant case was
enacted pursuant to the MPC and we therefore conclude
that Section 17.1 does not prevent the Board from consider-
ing the impact of the proposed mine on air and water
quality and the potential damage to the dam from blasting.

■ The authority of the Department of Environmental
Resources (DER)[7] to regulate operational aspects of sur-
face mining is not inconsistent with the Board's authority to

6. Act of May 31, 1945, P.L. 1198, *as amended,* 52 P.S. § 1396.17a.
Section 17.1 was added to the Act by Section 10 of the Act of October
10, 1980, P.L. 835.

7. Amerikohl obtained a Surface Mining Permit from the DER to
conduct surface coal mining operations at the site in question on
March 12, 1990.

consider the effect of the operation on the health, safety and welfare of the community. In *Abbey*, 126 Pa.Commonwealth Ct. at 243, 559 A.2d at 111, this Court considered whether objectors to a "waste-to-energy" and recycling facility could introduce such testimony. The Court in *Abbey* opined:

> The fact that a facility will most likely be permitted by the DER, does not preclude objectors from introducing testimony that in a particular zoning district, the use, in their opinion, is contrary to the health, safety and welfare of the neighborhood. The grant of a permit by the DER is not tantamount to a zoning permit. To hold otherwise, would undercut the purpose of a zoning board in reviewing whether a proposed use would be contrary to *a particular zoning district's citizens' health, safety and welfare.* (Emphasis in original.)

We adopt the reasoning in *Abbey* to conclude that the Board may properly base its decision on the impact of a proposed facility, permitted and regulated by the DER, on the health, safety and welfare of the community.

Based on the above discussion, we affirm the order of the Court of Common Pleas of Fayette County.

## ORDER

NOW, August 29, 1991, the order of the Court of Common Pleas of Fayette County in the above-captioned matter is affirmed.