**Charles M. HEADER and Edith M. Header, Appellants,**

v.

**SCHUYLKILL COUNTY ZONING HEARING BOARD and Schuylkill County.**

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 2003.

Decided Jan. 30, 2004.

R. Timothy Weston, Harrisburg, for appellant.

Joseph H. Jones, Pottsville, for appellee.

BEFORE: COLINS, President Judge, and FLAHERTY, Senior Judge [1], and McCLOSKEY, Senior Judge.

OPINION BY President Judge COLINS.

Charles M. and Edith M. Header (Headers) appeal from the order of the Court of Common Pleas of Schuylkill that affirmed a decision of the Schuylkill County Zoning Hearing Board (ZHB) that upheld the zoning officer's denial of a permit to extract, process and bottle spring water on their property. We reverse the trial court.

The Headers are the owners of certain property located in Barry Township, Schuylkill County. Part of the property is zoned Conservation Residential (CR) and another part is zoned Agricultural (A). On April 23, 2001 the Headers, through WJP Engineers of Pottsville, applied for a zoning permit to allow them to construct a system to extract water from springs in the part zoned CR and pipe it to the part zoned A, where it would be purified by exposure to ultraviolet light, filtered to remove particulate, and stored in tanks before being transported to a bottling plant or bottled there on site. The zoning officer denied the application on the ground that the proposed use was not permitted under Article III, Sections 3.310 and 3.410 of the Schuylkill County Zoning Ordinance (Ordinance) that govern CR and A zoning respectively.[2]

---

1. Senior Judge Flaherty considered this matter on the briefs.

2. Section 3.310 of the Ordinance, Conservation Residential, provides,

 3.310 *Principal Permitted Uses*
 Agricultural uses
 Bed and breakfast inns
 Cemeteries and mausoleums
 Churches, or other places of worship, including parish houses and related facilities
 Clubs, lodges and fraternal organizations
 Farm dwellings and other agricultural buildings
 Feed and grain mills and dryers
 Medical and dental offices
 Professional offices, including group practices and clinics
 Public uses (except sewage treatment plants)
 Recreation facilities, public
 Riding academics, livery (boarding) stables, including saddlery and tack shops
 Schools, public and private
 Single family dwellings

2. Section 3.410 of the Ordinance, Agricultural, provides,

 3.410 *Principal Permitted Uses*
 Agricultural uses
 Agribusiness uses, such as produce stands, greenhouses and nurseries, and livestock sale yards and buildings
 Bed and breakfast inns
 Cemeteries and mausoleums
 Churches, or other places of worship, including parish houses and related facilities
 Farm dwellings and other agricultural buildings
 Feed and grain mills and dryers
 Food processing and packing plants, and wineries
 Medical and dental offices
 Professional offices, including group practices and clinics
 Public uses (except sewage treatment plants)
 Recreation facilities, public
 Rental storage units, enclosed
 Riding academies, and livery (boarding) stables, including saddlery and tack shops

The Headers appealed the zoning officer's decision to the ZHB. After a hearing held on July 16, 2001, the ZHB concluded that the Headers proposed use was, "[N]othing other than a commercial business asking approval to operate in an Agricultural District and that is not a permitted use under the Ordinance." (Minutes of Hearing and Decision of the ZHB of July 16, 2001, p. 3) The Headers appealed to the Court of Common Pleas of Schuylkill County. The trial court, relying on the record made before the ZHB and the brief filed by the Headers,[3] affirmed the ZHB. The trial court rejected the Headers' contention that state and federal regulations preempt county and municipal control of water extraction, finding that local authorities retain control of a private individual's commercial use of water. The trial court also rejected the Headers' contention that the extraction and purification of water is food processing and therefore allowable in an A district. Finally, the trial court remanded the case to the ZHB to consider an issue raised by the Headers on appeal but not before the ZHB, whether the ZHB discriminated between public and other types of water suppliers by interpreting the Ordinance to allow public uses but to deny private individuals or entities the same use at the discretion of the ZHB. On remand the ZHB found that the proposed use did not meet the definition of a public use because the proposed venture was not shown to be identical to an existing public use. The trial court, again without consid-

ering additional evidence, affirmed the ZHB. This appeal followed.

■ The questions we are asked to consider are 1) whether the ZHB committed an error of law or abused its discretion by interpreting the Ordinance to forbid the extraction of water for commercial use in a CR district; 2) whether the ZHB abused its discretion or committed an error of law in failing to find that a spring water treatment, storage, bottling and loading facility constituted a food processing plant; 3) whether the ZHB committed an error of law or abused its discretion by interpreting the zoning ordinance to prohibit commercial uses in A zoning; and 4) whether the ZHB committed an error of law or abused its discretion by creating an impermissible, discriminatory distinction between publicly and privately owned water suppliers.[4]

■ We first address the threshold issue of whether the ZHB erred when it found that the extraction of water for commercial use was not permitted in a CR district. The ZHB tells us that the Susquehanna River Basin Commission and the Public Utility Commission control the amount of water that may be extracted, not whether extraction is a permitted use. "Once it becomes a permitted use the SRBC determines haw [sic] much may be extracted ... The PUC governs the withdrawal of water *regulated* by the PUC, but it is not regulated by the PUC until the zoning permit is granted and the applicant

Schools, public and private
Seed distribution and storage facilities
Single family dwellings
Veterinary clinics and animal hospitals

3. The ZHB declined to file a brief before the trial court.

4. In an appeal from a decision of a zoning hearing board where the trial court relies solely on the record made before the board

and receives no additional evidence, our standard of review is whether the board committed an abuse of discretion or an error of law and when the trial court is alleged to have erred we will consider whether the trial court has abused its discretion or committed an error of law. *Amerikohl Mining, Inc. v. Zoning Hearing Board of Wharton Township,* 142 Pa.Cmwlth. 249, 597 A.2d 219 (1991), *petition for allowance of appeal denied,* 529 Pa. 652, 602 A.2d 861 (1992).

begins to withdraw water." (Minutes of Hearing and Decision of the ZHB of July 16, 2001, p. 2.) The question then becomes whether the Ordinance permits the extraction of water for commercial use in CR zoning. Permitted uses in CR zoning include commercial uses such as bed and breakfast inns, medical and dental offices, riding academies and livery stables. All of these commercial uses require water to operate. Section 604 of the Pennsylvania Municipalities Planning Code [5] (MPC) provides that, "[t]he provisions of zoning ordinances *shall* be designed: (1)[t]o promote, protect and facilitate . . . the provision of a safe, reliable and adequate water supply for domestic, *commercial,* agricultural or industrial use. . . ." 53 P.S. § 10604(1)(emphasis added). The MPC also instructs us to interpret the provisions of an ordinance in favor of the property owner. Section 603.1, 53 P.S. § 10603.1.[6] Because the Ordinance does not expressly prohibit the extraction of water and we are to construe it in a light most favorable to the Headers, we conclude that the ZHB erred in finding that the extraction of water for commercial use is not permitted under CR zoning.

 The Headers next claim that the ZHB erred when it found that the bottling of spring water is not a permitted use in A zoning. Section 3.410 of the ordinance provides that a principal permitted use in A zoning is "Food processing and packing plants, and wineries." The Headers contend that the treatment of spring water to make it suitable to be bottled for human consumption is food processing. The Ordinance does not define "food processing" so

we must follow the Statutory Construction Act, 1 Pa.C.S. §§ 1501–1991, and construe the phrase according to its common and approved usage.[7] Section 603.1 of the MPC, 53 P.S. § 10603.1, provides that any doubt must be resolved in favor of the landowner and the least restrictive use of the land. We will generally use a dictionary definition to determine the common use of a term. *Kissell v. Ferguson Township Zoning Hearing Board,* 729 A.2d 194, 197 (Pa.Cmwlth.1999). Webster's Third New International Dictionary (2002) defines "food" as

> material consisting of carbohydrates, fats, proteins and supplementary substances (as minerals, vitamins), that is taken or absorbed into the body of an animal in order to sustain growth, repair, and all vital processes and to furnish energy for all activity of the organism . . . something that nourishes or develops or sustains.

Webster's Third New International Dictionary (2002), at 884.

This definition is consistent with Section 2 of the Food Act, 31 P.S. §§ 20.1–20.18,[8] which defines food as "An article used for food or drink by humans, including chewing gum and articles used for components of any article." 31 P.S. § 20.2. Water is "something that nourishes or develops or sustains" a body and is used in or found as a component of virtually every article of food and we thus conclude that water is a food.

 We have defined "processing" as "a particular method of doing something, gen-

---

5. Act of July 31, 1968, P.L. 805, *as amended.* 53 P.S. §§ 10601–10621

6. Added by Section 48 of the Act of December 21, 1988, P.L. 1329.

7. The Statutory Construction Act does not expressly apply to local zoning ordinances but

we are to follow its principles in construing such an ordinance. *Kissell v. Ferguson Township Zoning Hearing Board,* 729 A.2d 194, 197 (Pa.Cmwlth.1999).

8. Act of July 7, 1994, P.L. 421, *as amended.*

erally involving a number of steps or operations ..." *Thesing v. Zoning Hearing Board of York Township*, 140 Pa.Cmwlth. 371, 593 A.2d 10, 12 (1991). Our Supreme Court has defined processing as "a flexible term and it may refer to either chemical or physical changes in the thing acted upon." *Id.* at 13 (quoting *Gulf Oil Corporation v. City of Philadelphia*, 357 Pa. 101, 111, 53 A.2d 250, 255 (1947)). The Headers proposed operation of purifying spring water by exposing it to ultraviolet light and filtering it to remove particulates is a method of doing something that involves a number of steps or operations that will cause chemical and physical changes in spring water, the thing acted upon. The system that the Headers propose to install to render spring water fit for human consumption is a food processing operation.

■ The Headers next complain that the ZHB denied their application because it concluded that theirs was to be a commercial food processing operation and that while food processing was a permitted use, *commercial* food processing was not. This is a blatant rewriting of the Ordinance that defies common sense and logic and must be rejected. The Ordinance permits "food processing" in A zoning and specifically allows the operation of such things as packing plants and wineries without making the absurd distinction that only non-commercial packing plants or wineries are permitted to operate. The absurdity of the ZHB's decision is clear if we apply their distinction to the permitted uses in A zoning. Who would operate a dairy farm, process and bottle milk only to be forbidden to sell it? Who would operate a packing plant, process cattle into prepared cuts of meat only to be forbidden to sell them? Medical and dental offices could be built and staffed but would be forbidden to charge their patients. There is no distinction between commercial and non-commer-

cial uses in the Ordinance, and we conclude that the ZHB erred in attempting to create one.

The Ordinance, on its face and within its four corners, clearly permits the extraction, purification, storage and bottling of spring water as a commercial enterprise. Accordingly, the order of the Court of Common Pleas of Schuylkill County in this matter is reversed.

Judge LEAVITT recused.

### ORDER

AND NOW, this 30th day of January 2004, the order of the Court of Common Pleas of Schuylkill County in this matter is REVERSED.