**CITIZENS FOR RESPONSIBLE DEVELOPMENT–WINDSOR TOWNSHIP, INC.**

v.

**WINDSOR TOWNSHIP ZONING HEARING BOARD**

**Appeal of: Wal–Mart Real Estate Business Trust.**

Commonwealth Court of Pennsylvania.

Argued Dec. 11, 2006.

Decided Feb. 28, 2007.

George W. Broseman, Blue Bell, for appellant.

John M. Ogden, York, for appellees.

BEFORE: COLINS, President Judge,[1] and McGINLEY, Judge, and LEAVITT, Judge.

OPINION BY President Judge COLINS.

This is an appeal from the order of the Court of Common Pleas of York County (trial court), reversing the decision of the Windsor Township Zoning Hearing Board (ZHB) granting a special exception to Wal–Mart Real Estate Business Trust (Wal–Mart) to permit use of certain property for a Wal–Mart store in Windsor Township (Township). The Citizens for Responsible Development–Windsor Township, Inc.[2] (CFRD) filed an appeal from the ZHB's decision, and Wal–Mart, as equitable owner of the property directly involved in the appeal, filed a "Notice of Intervention." We affirm.

---

1. This case was assigned to the opinion writer prior to the date when President Judge Colins completed his tenure as president judge.

2. Citizens for Responsible Development is a "community organization" as defined by Section 908(3) of the Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, as amended, 53 P.S. § 10908(3).

Wal–Mart submitted an application for a special exception[3] to construct a 197,000 square foot "Super Center" store on a cornfield along Cape Horn Road. The proposed site is located primarily within a C–2 Planned Commercial Zone.[4] Because the store will contain more than 20,000 square feet, it is considered a "Shopping Center" as defined in section 112 of the Windsor Township Zoning Ordinance (ordinance). This use requires approval of a special exception by the ZHB. There are three sections of the ordinance relevant to this action. **Section 312.4,** the general provision applicable to all zones, states that

> Except as provided elsewhere, a ground level loading area may be located in any side or rear yard. No exterior portion of an off-street loading facility (including access drives) shall be located within fifty feet (50') of any land within a residential zone, or residential use. Where possible, off-street loading facilities shall be located on the face of a building not facing any adjoining land within a residential zone.

**Section 452.10,** part of the regulations for Shopping Centers, modifies the setback from a residential district from 50' to 100'. **Section 211.10,** the specific regulation for Planned Commercial Zones, adds to the general requirement of Section 312.4; it states:

Off-street loading shall be provided as specified in Section 312 of this Ordinance. " **In addition, no off street loading areas shall be permitted on any side of a building facing adjoining lands with residential zones, nor any side of a building facing an adjoining street.**" (emphasis added).

■ Hearings on the special exception commenced in July, 2004 and continued for eleven consecutive months; Wal–Mart concluded its case-in-chief in November, 2004, and CFRD concluded its case-in-chief in January, 2005. In March, 2005 Wal–Mart presented rebuttal evidence, including revised plans. CFRD presented counter-rebuttal in April, 2005, and in May, the ZHB voted to approve the application subject to certain conditions.[5] In January, 2006 the trial court reversed the ZHB and this appeal followed.[6]

The zoning classifications for properties to the south, east and west of the proposed building are residential low density (R–1). The area to the north is part R–1 and part general commercial (C–1). Existing land uses to the south and west are residential; to the east, agricultural production, and to the north, agricultural and commercial. The off-street loading area is located on the southern side of the building. Seven loading spaces/docks are "tucked" into protuberances from the building, parallel to

---

3. Wal–Mart did not request a variance from the zoning ordinance.

4. A small rectangular area covering a portion of the property's footage along Cape Horn Road is located in a General Commercial Zone (C–1).

5. Conditions include requirements that the loading dock area must be closed between 10PM and 7AM, and no trucks may be parked in the docks or loading area or any area between the store and the southern property line between 10PM and 7AM unless they are completely shut down.

6. In an appeal from a decision of a zoning hearing board where the trial court relies solely on the record made before the board and receives no additional evidence, our standard of review is whether the board committed an abuse of discretion or an error of law, and when the trial court is alleged to have erred we will consider whether the trial court has abused its discretion or committed an error of law. *Amerikohl Mining Inc. v. Zoning Hearing Board of Wharton Township,* 142 Pa.Cmwlth. 249, 597 A.2d 219 (1991), *petition for allowance of appeal denied,* 529 Pa. 652, 602 A.2d 861 (1992).

the residential zone, with four loading docks on one side pointing toward three loading docks on the opposite side (Wal–Mart amended its plan to relocate the seventh loading dock from a location perpendicular to the residential zone to the location parallel to the residential zone, together with the other loading docks).

Further revisions to the plan presented in the rebuttal stage include the addition of sound barriers in the form of 10 feet high × 85 feet long walls on both ends of the building to shield the loading docks. There are three double doors and one single door located on the southern side of the building (Decision of the ZHB, Finding of Fact, # 33, p. 11) and a 130 foot tractor trailer turn-around.

In its decision, the ZHB examined the final design of the loading area, with its seven loading docks, and focused on the question of whether the two areas specifically containing the seven loading docks, as configured subsequent to the revision, are "on the side of a building facing adjoining lands within a residential zone." The ZHB looked at the dictionary definitions of the words "side" and "face," and concluded that the loading dock areas are not on the "side" of the building "facing" the residential zone. The ZHB determined that "all seven" loading docks abut walls which are not "facing" the residential zones; the loading docks face each other, sheltered by barriers, and are not on the "side" of a building which-"faces" "residential properties." (Decision of the ZHB, p. 56.)

The trial court noted that the term "off-street loading area" is not defined in the ordinance, and stated that the clear intent behind the ordinance is to protect neighboring citizens from the effects of light, noise, exhaust, vibration, and general disturbance associated with retail loading and unloading activities; the trial court then defined the loading area to include "the entire sphere of operations with respect to loading activities, including the area where trucks will maneuver in order to dock with the building appendages". (Trial Court Opinion, p. 5.) The trial court stated that simply adding appendages to the side of the building facing a residential area and orienting the docks toward one another was not sufficient to protect the public and comply with the ordinance, and that the sound barriers proposed do not change the fact that the loading area, as the trial court interprets the ordinance, is still on the side of a building facing a residential zone.

On appeal, Wal–Mart argues that the trial court improperly applied the general off-street loading requirement of the ordinance instead of the specific off-street loading requirement applicable to Shopping Centers; and improperly rejected the ZHB's factual finding that the proposed loading spaces are not located on the side of the building facing a residential property. Wal–Mart further contends that the trial court failed to resolve the ambiguous off-street loading provisions in the ordinance in favor of the property owner.

■ This Court has recognized that "specificity is the essential characteristic of operative special exception requirements in an ordinance." *Bray v. Zoning Board of Adjustment,* 48 Pa.Cmwlth. 523, 410 A.2d 909, 911 (1980). Thus, the Supreme Court has long defined a special exception as one allowable where requirements and conditions detailed in the ordinance are found to exist. *Id., citing Lukens v. Zoning Board of Adjustment of Ridley Township,* 367 Pa. 608, 80 A.2d 765 (1951); *Application of Devereux Foundation, Inc.,* 351 Pa. 478, 41 A.2d 744 (1945). We find no ambiguity in the three operative provisions of the ordinance that regulate the issue *sub judice.* We find error, however, in the ZHB's determination that the two areas containing the loading docks consti-

tute the "loading area," for purposes of interpreting the ordinance. The ZHB reached the specious conclusion that because the loading dock areas face each other, sheltered by barriers, they are not on the side of the building which faces residential properties, and therefore meet the requirements of the ordinance; this determination was made notwithstanding the ZHB's findings that in addition to the seven loading docks, there are three double doors and a single door, as well as a 130 foot tractor trailer turn-around on the southern side of the building (see Revised Site Plan, Exhibit 2.)

■ Wal–Mart also raises arguments regarding two issues not addressed by the trial court (i) that the ZHB committed no error of law in determining that Wal–Mart satisfied the ordinance's public water and sewer requirements; and (ii) that the ZHB committed no error of law in finding that CFRD was afforded a full and fair opportunity to present its case. The trial court reversed the ZHB solely on the grounds that Wal–Mart failed to meet the off-street loading requirements of the ordinance; therefore, these issues are not ripe for this Court's review.

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 28th day of February 2007, the order of the Court of Common Pleas of York County is affirmed.