540 A.2d 588

Danwell Corporation et al., Appellants *v.* Zoning Hearing Board of Plymouth Township and Plymouth Township, Appellees.

Argued February 22, 1988, before Judges CRAIG and DOYLE, and Senior Judge KALISH, sitting as a panel of three.

*Edward J. Hughes,* with him, *John G. Kaufman, Kaufman & Hughes,* for appellants.

*Herbert F. Rubenstein,* for appellee, Plymouth Township Zoning Hearing Board.

*Thomas F. Oeste,* with him, *Arthur Lefkow, Wisler, Pearlstine, Talone, Craig and Garrity,* for intervenor, Plymouth Township.

OPINION BY JUDGE CRAIG, April 4, 1988:

Danwell Corporation, Valley Forge Industries, Inc., and Asphalt Paving and Supply Company (Danwell) appeal an order of the Court of Common Pleas of Montgomery County affirming the denial of a special exception by the Zoning Hearing Board of Plymouth Township. We affirm the trial court's decision.

Danwell sought to construct a trash transfer station in a district zoned for light industrial use. Following a hearing on Danwell's application for a special exception, or alternatively, an interpretation of Plymouth Township Zoning Ordinance Section 1400 as allowing a trash transfer station as a permitted use, the four-member board split its decision, two members voting in favor and two against the application. The board issued a written decision, including findings of fact and conclusions of law, denying the application. Only the two members of the board who voted against the application signed the decision.

Danwell filed both a timely statutory appeal of the board's decision and a complaint in mandamus in the court of common pleas, asking the court to order the board to enter a deemed approval of its application, because of the board's failure to render a decision as required by section 908 of the Pennsylvania Municipalities Planning Code (MPC).[1]

---

[1] Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10908.

Danwell argued that the evenly-divided vote of the board was not a decision within the meaning of section 908. This court affirmed the trial court's dismissal of Danwell's mandamus complaint, holding that a tie vote of a zoning hearing board, conveyed to the applicant within forty-five days of the hearing, is a valid denial decision under 53 P.S. §10908. *Danwell Corporation v. Zoning Hearing Board,* 108 Pa. Commonwealth Ct. 531, 529 A.2d 1215 (1987).

Now, as to the statutory zoning appeal, Danwell raises the following issues: (1) whether the trial court abused its discretion by not allowing Danwell to present additional evidence on appeal; (2) whether the board's 2-to-2 vote was valid as a decision, in relation to the decisional time limit of MPC §908, and with respect to giving effect to the findings; (3) whether the vote of one board member should have been invalidated because of prejudice and bias; (4) whether the board's findings were supported by substantial evidence; (5) whether the board erred as a matter of law in concluding that the trash transfer station was not a permitted use; and (6) whether the board erred as a matter of law in holding that the trash transfer station did not qualify as a special exception under the township zoning ordinance.

### 1. Petition to Present Additional Evidence

Danwell first argues that the trial judge abused his discretion by refusing to accept additional evidence at the appeal hearing. Danwell claims that some of this evidence was not available at the time of the hearing before the board, and that other evidence was improperly excluded by the board.

Section 1010 of the MPC, 53 P.S. §11010, provides in pertinent part:

Section 1010. Hearing and Argument of Zoning Appeal.—If upon motion it is shown that

proper consideration of the zoning appeal requires the presentation of additional evidence, a judge of the court may hold a hearing to receive additional evidence . . . . If the record below includes findings of fact made by the governing body, board or agency whose decision or action is brought up for review and the court does not take additional evidence or appoint a referee to take additional evidence, the findings of the governing body, board or agency shall not be disturbed by the court if supported by substantial evidence. If the record does not include findings of fact, or if additional evidence is taken by the court or by a referee, the court may make its own findings of fact based on the record below as supplemented by the additional evidence, if any.

In this case, the board's decision included 27 findings of fact. A court of common pleas faces compulsion to hear additional evidence in a zoning case only where the party seeking the hearing demonstrates that the record is incomplete because that party was denied the opportunity to be heard fully, or because relevant testimony was offered and excluded. *Borough Council of Churchill Borough v. Pagal, Inc.*, 74 Pa. Commonwealth Ct. 601, 460 A.2d 1214 (1983). In his opinion, the trial judge found that Danwell was given every opportunity to present relevant evidence at the zoning hearing, and therefore refused to accept additional evidence on appeal.

We agree with the trial court's decision. Our review of the record indicates that Danwell had ample opportunity to present evidence to the board. Danwell claims that the board improperly excluded minutes of the Plymouth Township Council Meeting regarding a proposed resource recovery district, but Danwell never offered that evidence. The evidence which Danwell con-

tends was not available at the time of the hearing addresses issues which were either irrelevant to the board's decision (zoning officer's grant of a use and occupancy permit for a truck terminal on the premises), or represented an attempt to bolster the testimony of witnesses Danwell presented at the hearing (a traffic study dated June, 1986, done over a year after the board's hearing; new proposals for treating surface water runoff). Under these circumstances, the trial judge did not abuse his discretion by denying Danwell's petition to introduce additional evidence.

### 2. Effect of Board's 2-to-2 Vote on Danwell's Application

Danwell contends that the split decision of the board did not constitute a valid decision under section 908 of the MPC, and that the findings of fact issued by the board were not binding on either the parties or the trial court. Danwell concludes that the trial court erred in not giving its application *de novo* review.

First, as noted above, we specifically held in Danwell's mandamus action that the board's 2-2 vote constituted a decision to deny the application under the MPC. *Danwell*, 108 Pa. Commonwealth Ct. at 535, 529 A.2d at 1217.

Second, in response to Danwell's argument that findings of fact signed by only two members of a four-person board are not effective under section 908(9) of the MPC, we refer to our decision in *Giant Food Stores, Inc. v. Zoning Hearing Board of Whitehall Township*, 93 Pa. Commonwealth Ct. 437, 501 A.2d 353 (1985). In *Giant Food*, the zoning officer issued a letter to the applicant describing the board's split vote decision as a denial of the applicant's zoning request. On appeal to the court of common pleas, the trial court remanded the case to the board for findings of fact. In a concurrent

action in mandamus, the trial court held that a tie vote of a zoning hearing board constituted a negative decision. The procedures followed in *Giant Food* demonstrate that findings of fact signed by only one-half of a board's members are an effective basis for review on appeal.

We conclude that the denial decision rendered by the board, including its findings of facts and conclusions of law, constituted the decision required by section 908(9) of the MPC. The trial judge acted correctly in limiting his review of the board's decision to a determination of whether the board abused its discretion or committed an error of law.

## 3. *Invalidation of Board Member's Vote for Bias or Prejudice*

Danwell next contends that the trial court erred by not disqualifying Mr. Culp, one of the two board members who voted against the proposed trash transfer station. Danwell contends that, at the time of the hearing and decision on the trash transfer station, Culp was a candidate for the Plymouth Township Council, the township's governing body. Danwell argues that, because the township's proposed resource recovery ordinance was a campaign issue, and one of the objectors before the board was a candidate running against Culp, Culp should have recused himself from deliberations on this proposal.

In *Borough of Youngsville v. Zoning Hearing Board*, 69 Pa. Commonwealth Ct. 282, 450 A.2d 1086 (1982), we recognized the general rule that a municipal officer should disqualify himself from any proceeding in which he has a personal or pecuniary interest that is immediate or direct. In this case, the trial court found that Danwell made no objection to Culp's participation in the case during the board hearing, that there was no

evidence that Culp had an immediate or direct personal or pecuniary interest in the subject matter of the application, and that nothing in the record indicated that Culp conducted himself in a biased or prejudicial manner. Accordingly, the trial judge ruled against Danwell's argument that Culp be disqualified and his vote nullified.

We agree with the trial court's holding. Although Danwell contends that it requested Culp's recusal before the board reached a decision, Danwell submitted its request after the board's hearing on the trash transfer station. Danwell should have placed its objection to Culp's participation on the record, so that the merits of the objection would be available for appellate review. Further, Culp's situation is distinguishable from those cases in which we have held that a board member should be disqualified from participation. *Borough of Youngsville*, 69 Pa. Commonwealth Ct. at 290, 450 A.2d at 1091 (where a board member was disqualified because he had been employed by the applicant and had testified on the applicant's behalf); *McVay v. Zoning Hearing Board of New Bethlehem Borough*, 91 Pa. Commonwealth Ct. 287, 496 A.2d 1328 (1985) (where a majority of the members of the board, before appointment, had signed and filed petitions in opposition to the zoning ordinance at issue). Culp had no direct personal or pecuniary interest in the proposed transfer station and testified before the trial court that his decision to vote against the transfer station "had nothing to do with my candidacy. It was based on the merits of the case." Under these circumstances, Danwell failed to establish grounds for disqualification.

## 4. Board Findings and Substantial Evidence

Danwell also argues that several of the board's findings were not supported by substantial record evi-

dence. Specifically, Danwell challenges the basis for the following findings:

(1) That more than one hundred trucks will enter and leave the property daily, creating substantial detrimental effects to nearby residential properties (Findings Nos. 12 and 20);

(2) That trash would not remain on the premises longer than forty-eight hours; that spontaneous combustion of trash stored in the building was a possibility; and that visual inspection of the trash would not be adequate to prevent chemical or hazardous wastes from being brought to the site (Findings Nos. 15 and 16);

(3) That noise and odors will emanate from the property, exacerbating odors from a nearby sanitary sewer plant (Findings Nos. 17 and 23);

(4) That trucks bringing trash to the station might leak liquid materials and noxious odors on the streets and highways of the township leading to the property; that Danwell's plan to wash only the outside of the trucks could create a health hazard (Findings Nos. 18 and 19);

(5) That contaminated water and liquids from the refuse and from washing the building interior, as well as chemicals used to exterminate vermin, would be washed into the public sanitary sewer system (Findings Nos. 20 and 22);

(6) That two of the existing buildings are located within fifty feet of the right-of-way line on Conshohocken Road; that Danwell doesn't propose to operate sanitary landfill; and that the trash transfer station does not fit the definitions of the distribution, processing or sanitary landfill uses which are permitted in the district under section 1400. (Findings Nos. 24, 26, 27.)

The trial court held that the record verified that the board had based its findings on substantial evidence.

Where, as here, the trial court takes no additional evidence, the scope of our review is limited to determining whether the board committed a manifest abuse of discretion or an error of law in not granting the variance. We may conclude that the board abused its discretion only if its findings are not supported by substantial evidence. By "substantial evidence" we mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 555, 462 A.2d 637, 639-40 (1983).

Our review of the record reveals substantial evidence to support the findings that Danwell challenges. Danwell's witnesses testified on the issues addressed by each of these findings. The board clearly weighed the evidence presented on these questions and found Danwell's proposed methods of addressing these problems to be lacking. This court will not disturb findings made by the trier of fact which are supported by substantial record evidence.

### 5. Trash Transfer Station as a Permitted use

Danwell argues that the trial court erred by not finding that the trash transfer station was a permitted use. Section 1400 of the Plymouth Township Zoning Ordinance provides the following use regulations for a light industrial district:

> A building may be erected, altered or used, and a lot may be used or occupied, for any of the following purposes, and no other:
>
> . . . .
>
> D. Warehousing, distributing, laundrying, cleaning and dyeing; sale of ice, coal, fuel oil, monuments; metalsmithing, extrusion of small materials, welding, body repair, plating, cold storage plant, frozen food locker.

E. Manufacturing or processing of beverages, confections, cream, all food products (exclusive of fish packing), ceramics, clothing, plastics, electrical appliances.

. . . .

J. Accessory use on the same lot with and customarily incidental to any permitted use.

K. Sanitary landfills which shall be conducted and operated in accordance with regulations promulgated and amended from time to time by the Health Advisory Board, and approved by the Township Council.

Danwell first contends that neither "distributing" nor "processing" is defined in the township zoning ordinance, and that the usual and ordinary definitions of these terms are broad enough to include the operation of the trash transfer station.

Whether a proposed use falls within a given category specified in an ordinance is a question of law. The issue is one of statutory construction and the function of the reviewing court is to determine the intent of the legislative body which enacted the legislation. *Warren v. Collier Township Board of Commissioners,* 62 Pa. Commonwealth Ct. 481, 437 A.2d 86 (1981). Where the statute or ordinance does not specifically define the term sought to be construed, and the words are ones in common usage, they are to be given their common usage meaning. Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1903(a); *Appeal of Mt. Laurel Racing Association,* 73 Pa. Commonwealth Ct. 531, 458 A.2d 1043 (1983).

We adopt Judge Lowe's conclusion that Danwell's argument is without merit:

In the instant case, the proposed use is not distributing or processing as those terms are used in §1400 of the Ordinance. This Court has

reviewed the definitions of both terms set forth in the appellants' and respondent's briefs. It has also reviewed the testimony presented at the zoning hearing, and are convinced that the proposed trash transfer station does not constitute 'distribution' or 'processing' as contemplated under the definitions cited by appellants.

The trash transfer station proposed by appellants emphasizes the collection of trash from many sources, the consolidation of the trash on the subject property, and the shipping of the trash in bulk to a landfill source. We do not believe that such a proposed use constitutes distribution. Further, appellants have no intention of processing the trash brought into the transfer station. The trash would not be treated or transformed into a different product. At the May 29, 1985 hearing, witnesses for the appellants testified that no processing was to be done on the trash. Thus, we are unconvinced that this proposed use constitutes processing.

We further note that the proposed use does not constitute a 'sanitary landfill', nor does it constitute a 'truck terminal' as permitted in §1911(B) of the Ordinance. Clearly, the board did not abuse its discretion or commit an error of law in determining that a trash transfer station did not constitute distributing, processing, a sanitary landfill, or a truck terminal as permitted in §1400 of the Ordinance.

## 6. *Special Exception*

Finally, Danwell argues that the trial court erred in concluding that Danwell had not met its burden of proof on its application for a special exception.

Section 1400.I of the township zoning ordinance allows "any use of the same general character as any permitted use when authorized as a special exception." Section 2101(D) provides:

D.   Standards of Proof.

1.   An applicant for a special exception shall have the burden of establishing both:

(a)   That his application falls within the provisions of the Ordinance which accords to the applicant the right to seek a special exception; and

(b)   That allowance of the special exception will not be contrary to the public interest.

. . . .

3.   In determining whether the allowance of a special exception or a variance is contrary to the public interest, the Board shall consider whether the application, if granted, will:

(a)   Substantially increase traffic congestion in the streets;

(b)   Increase the danger of fire or panic or otherwise endanger the public safety;

(c)   Overcrowd the land or create an undue concentration of population;

(d)   Impair an adequate supply of light and air to adjacent property;

(e)   Be consistent with the surrounding zoning and uses;

(f)   Adversely affect the comprehensive plan of the Township;

(g)   Unduly burden water, sewer, school, park or other public facilities;

(h)   Be detrimental to the appropriate use of adjacent property; or

(i)   Endanger the safety of persons or property by improper location or design of facilities for ingress or egress; or

(j)  Otherwise adversely affect the public health, safety, morals or general welfare.

4.  In all cases the applicant's burden of proof shall include the duty of presenting credible evidence sufficient to persuade the Board that applicant has satisfied the criteria set forth in subparagraphs D.1.(a) and D.2.(a) of this section. In any case where (i) the Board requests that the applicant produce evidence relating to the criteria set forth in subparagraph D.3. of the section, or (ii) any other party opposing the application shall claim that an allowance of the application will have any of the effects listed in subparagraph D.3. of this section, the applicant's burden of proof shall include the burden of presenting credible evidence sufficient to persuade the Board that allowance of a special exception or variance will not be contrary to the public interest with respect to the criteria so placed in issue. (Ord. No. 605, §1, 11-9-70)

An applicant for a special exception must meet the burden of establishing that the proposed use complies with the specific requirements of the ordinance which expressly governs the grant of a special exception. *Bray v. Zoning Board of Adjustment,* 48 Pa. Commonwealth Ct. 523, 410 A.2d 909 (1980). If that burden is satisfied by the applicant, then any objectors to the proposed use must, to be successful, satisfy their burden of showing that the proposed use is a detriment to public health, safety and welfare. *Atlantic Richfield Co. v. City of Franklin Zoning Hearing Board,* 77 Pa. Commonwealth Ct. 102, 465 A.2d 98 (1983).

We agree with the trial judge that Danwell failed to establish that the trash transfer station shared the same general nature as those light industrial uses permitted under section 1400. Judge LOWE easily distinguished

the trash transfer station from the permitted uses of sections 1400.D (distribution), 1400.E (processing), 1400.K (sanitary landfill) and 1911(b) (truck terminal):

However, the proposed use is not alike in kind, degree, or quality with any permitted use. The record shows that the appellants propose to collect and consolidate trash from many sources, and then ship it to a landfill. The trash is not treated or changed into another product. Clearly, the characteristics of this use do not fall within the common meaning of the words distribution or processing. Further, we agree with respondents that the distinction to be made between a sanitary landfill and a trash transfer station is not with the product involved, but with the method of disposal of the product. Trash is buried, and thus permanently disposed of at the disposal site. With a trash transfer station, there is a constant flow of trash into, on, and out of the property. Clearly, the method of disposal at a trash transfer station is entirely dissimilar to the method used at a sanitary landfill. It is the opinion of this Court that the two uses cannot be considered to be of the 'same general character.' Hence, not even by special exception could the trash transfer station be brought within the Ordinance's allowance of uses permitted in the Limited Industrial District.

Our review of the record also supports the trial court's determination that Danwell failed to respond adequately to the specific objections raised by the board and protestants at the zoning hearing. These issues included concerns over the volume of heavy trucks, the detrimental impact on the surrounding residential areas, the impairment of the air on adjacent properties by odors from the transfer station, and the impact on

traffic safety. The board did not abuse its discretion in determining that the evidence presented failed to overcome the legitimate concerns of the objectors, and that Danwell failed to establish compliance with the ordinance standards for a special exception.

Therefore, the decision of the court of common pleas is affirmed.

### ORDER

Now, April 4, 1988, the order of the Court of Common Pleas of Montgomery County, No. 85-11869, dated February 20, 1987, is affirmed.