# Liberty Development Company LLC v.
# Board of Supervisors of Liberty Township

*James M. Strong,* for plaintiff.
*Walton Davis,* for defendant.

GEORGE, *J.,* June 24, 2005—This matter comes before the court on an appeal filed by Liberty Development LLC from a decision rendered by the Board of Supervisors of Liberty Township, which denied the approval of a residential development plan. By order of court dated June 20, 2004, permission to intervene was granted to a number of neighboring landowners (intervenors). Currently, Liberty Development requests to present additional evidence to the court. Both the board and intervenors oppose the request. For the reasons set forth hereafter, the request to present additional evidence is granted in part and denied in part.

Liberty Development's request to present additional evidence is authorized by section 1005-A of the Municipal Planning Code (MPC), 53 P.S. §11005-A. This section provides that the court may hold a hearing to receive additional evidence if "it is shown that proper consideration of the land use appeal requires the presentation of additional evidence. . . ." 53 P.S. §11005-A. Liberty Development suggests that appellate cases interpreting this section have instructed that the court of common pleas is vested with wide discretion to permit additional evidence without a threshold showing by the moving party. On the other hand, the board and intervenors interpret this same appellate authority as requiring the moving party to fulfill either one of two requirements before additional evidence may be accepted by the court. They argue that additional evidence is permitted only where the party seeking to introduce the additional evidence demonstrates that the record is incomplete because the party was denied an opportunity to be fully heard, or because relevant testimony was offered and excluded. It appears that this divergence in interpretation finds its

genesis in the language of a number of appellate court opinions.

Appellate court opinions commenting on the admissibility of additional evidence in a land use appeal commonly recognize that the "question of whether presentation of additional evidence is to be permitted is a matter within the sound discretion of the trial court." *Caln Nether Co. v. Board of Supervisors of Thornbury Township,* 840 A.2d 484, 498 (Pa. Commw. 2004), citing *Eastern Consolidation and Distribution Services Inc. v. Board of Commissioners of Hampden Township,* 701 A.2d 621 (Pa. Commw. 1997). Often, appellate opinions further clarify this general rule by noting that a trial court "faces compulsion to hear additional evidence in a zoning case *only* where the party seeking the hearing demonstrates that the record is incomplete because the party was denied an opportunity to be heard fully, or because relevant testimony was offered and excluded." *Eastern Consolidation,* 701 A.2d at 624 (quoting *In re Appeal of Little Britain Township,* 651 A.2d 606, 613 (Pa. Commw. 1994)). (emphasis in original) Because the majority of appellate opinions on this issue consider challenges to the trial court's *denial* of the admission of additional evidence, there is limited guidance on whether a minimum standard exists before the trial court may *grant* a motion to admit additional evidence. Liberty Development suggests, in light of the lack of clear authority, that appellate cases discussing when a court *must* accept additional evidence implicitly indicate that the court of common pleas has the right, in the exercise of the court's discretion, to accept additional testimony regardless of the circumstances. Although the language of some appellate authority may suggest such a conclusion, a careful re-

view of the evolution of the appellate authority interpreting the statutory authorization leads me to a different conclusion.

The cornerstone of Liberty Development's argument is the appellate language concerning the circumstances under which a court is under "compulsion" to accept additional evidence. Liberty Development suggests that the use of the word "compulsion" implies that there are other times when a court is free to exercise its discretion in "permitting" the admission of additional evidence. Review of appellate opinions on this subject reveals that the "compulsion" language first appeared in *Danwell Corp. v. Zoning Hearing Board of Plymouth Township,* 115 Pa. Commw. 174, 178, 540 A.2d 588, 590 (1988). In *Danwell,* the court addressed the issue of whether a trial judge abused his discretion by refusing to accept additional evidence at an appeal hearing. *Id.* at 177, 540 A.2d at 589. In affirming the trial court's decision, the Commonwealth Court opined that a "court of common pleas faces *compulsion* to hear additional evidence . . . only where . . . the record is incomplete because [the] party was denied the opportunity to be heard fully, or because relevant testimony was offered and excluded." *Id.* at 178, 540 A.2d at 590. (emphasis added) In support of this rule of law, the *Danville* court cited *Borough Council of Churchill Borough v. Pagal Inc.,* 74 Pa. Commw. 601, 460 A.2d 1214 (1983). While the language used by the Commonwealth Court in *Danville* is understandable in light of the issue presented, the unfortunate use of the word "compulsion" is an extension of the rule cited by that opinion as having been enunciated in *Pagal.*

In *Pagal,* the Commonwealth Court addressed the identical issue of whether the trial court erred in refus-

ing to grant a de novo hearing on appeal for the acceptance of additional evidence. *Pagal,* 74 Pa. Commw. at 607, 460 A.2d at 1218. After upholding the court of common pleas' refusal to accept additional evidence, the Commonwealth Court unequivocally stated: "In order for a de novo hearing to be warranted, the party seeking such hearing must generally demonstrate that the record is incomplete because it was denied the opportunity to be fully heard, or because relevant testimony it offered was excluded." *Id.* There is no mistaking the *Pagal* court's intent to set forth the standard which must be satisfied before the court of common pleas may accept additional testimony.

Importantly, the Commonwealth's opinion in *Pagal* cites *Boron Oil Co. v. City of Franklin,* 2 Pa. Commw. 152, 277 A.2d 364 (1971) as precedent. A meticulous search of case law reveals that *Boron Oil Co.* appears to be the first Commonwealth Court opinion on this subject. In *Boron Oil Co.,* the trial court refused to accept additional testimony from witnesses who would testify on matters dealing with the safety and the welfare of the community, including fire and traffic hazards in connection with service stations. *Boron Oil Co.,* 2 Pa. Commw. at 156, 277 A.2d at 366. In an issue of first impression, the Commonwealth Court upheld the court of common pleas' refusal to accept this additional evidence. In considering the relevant portion of the MPC,[1] the Commonwealth Court opined:

"This provision does not mean, as the appellant suggests, that the court must receive additional evidence

---

1. The *Boron* court interpreted former section 1009 of the MPC; although this section has been repealed, it is substantially identical to current section 1009.

provided only that it is relevant. Such interpretation would not only nullify the discretion plainly conferred on the court, it would effectually remove from the zoning hearing board the fact-finding function entrusted to it by the legislature. It would further render meaningless the requirement that the proposed additional evidence be shown to be necessary for proper consideration of the appeal. The appellant was required to demonstrate that the record was incomplete either because it was refused the opportunity to be fully heard, or that relevant testimony offered by it was excluded. *Udylite Corp. v. Philadelphia Zoning Board,* 16 D.&C.2d [346] ([Philadelphia Cty.] 1958), *affirmed,* 394 Pa. 645, 148 A.2d 916 (1959)." *Id.* at 157, 277 A.2d at 366. (footnote omitted)

Further search for the origin of this rule led me to *Udylite Corp. v. Philadelphia Board of Adjustment,* an opinion written by Judge Sporkin from the Philadelphia Court of Common Pleas. After recognizing that the "primary purpose and intent of the legislature in authorizing the creation of the Philadelphia Zoning Board of Adjustments was so [the] board should hear all testimony and engage its acquired expertise in the formulation of its decision," Judge Sporkin held that "only in extraordinary cases, such as where the board refuses to permit the parties to be fully heard, or misinterprets the relevancy of the proffered testimony, thus effectuating an incomplete record, the parties should be permitted to introduce additional testimony in the common pleas courts." *Udylite Corp.,* 16 D.&C.2d at 356.

After reviewing the evolution of the rule at issue, I am led to conclude that a court of common pleas may accept additional testimony when reviewing a land use appeal only when the moving party is able to establish that the

record before the hearing board is incomplete because the moving party was refused the opportunity to be fully heard, or relevant testimony was excluded. This conclusion is in accord with a number of recent Commonwealth Court opinions. See *Reformed Seventh Day Adventist Church Inc. v. Philadelphia Zoning Board of Adjustment,* 127 Pa. Commw. 445, 451, 561 A.2d 1324, 1327 (1989) (the court of common pleas is only warranted in taking additional testimony at a de novo hearing when the party seeking it demonstrates that the record is incomplete because it was denied an opportunity to be fully heard, or when the board excluded relevant testimony that was offered); *Lower Allen Citizens Action Group Inc. v. Lower Allen Township Zoning Hearing Board,* 93 Pa. Commw. 96, 106, 500 A.2d 1253, 1259 (1985) (in order to be entitled to present additional evidence, the moving party must demonstrate that the record before the board is incomplete either because appellant was refused the opportunity to be fully heard or relevant testimony was excluded); *In re Appeal of Little Britain Township,* 651 A.2d at 616 (the court of common pleas committed error in permitting the presentation of additional evidence in land use appeal where evidence is irrelevant).

Based on the foregoing, I decline Liberty Development's invitation to usurp the role of the board absent a showing that the record is incomplete because Liberty Development was either denied an opportunity to be heard fully, or because relevant testimony was offered and excluded. With this standard in mind, I will now turn to the proffered additional evidence which Liberty Development seeks to introduce.

First, Liberty Development seeks the opportunity to present additional testimony claiming that the chairman

of the board of supervisors exhibited a bias during proceedings before the board. Liberty Development points out that they requested, by letter addressed to the chairman, that the chairman recuse himself. Liberty Development further claims that the issue was properly preserved by filing a copy of the letter as an exhibit during the hearing before the board. Despite the request contained in the letter, Liberty Development notes that the chairman continued presiding over the proceedings, effectively denying its request for recusal by continuing to participate in the proceedings.

The board and intervenors oppose the presentation of additional evidence concerning bias on the basis that Liberty Development waived all claims of bias when they failed to properly raise the issues before the board. They argue that Liberty Development had the full opportunity, at the hearing before the board, to present facts in support of their claim of bias. The board also suggests that, even if the chairman improperly failed to recuse himself, the proposed additional evidence is irrelevant since the remaining vote of the board would have been a tie.[2] See *Kuszyk v. Zoning Hearing Board of Amity Township,* 834 A.2d 661, 665 (Pa. Commw. 2003) (a tie vote at the agency level acts as a denial of the relief requested). Therefore, they conclude that the chairman's actual bias, or lack thereof, is immaterial in light of the fact that the result would have remained the same if the chairman chose not to participate. I will address each of these arguments separately.

--------

2. Liberty Development's application for a planned residential development was denied by a 2-1 vote, with the chairman and another board member voting against the application and one board member voting in favor of the application.

Although it is premature to consider the merits of Liberty Development's claim of bias, a review of the applicable law in this area is helpful. Pennsylvania courts have long recognized the importance of independent and impartial tribunals in resolving legal controversies.

"A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end, no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. . . . This court has said . . . that 'every procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear and true between [a] state and the accused, denies the latter due process of law.' " *Schlesinger Appeal,* 404 Pa. 584, 598, 172 A.2d 835, 840-41 (1961) (quoting *Tumey v. Ohio,* 273 U.S. 510, 532, 47 S.Ct. 437, 444 (1927)). In this regard, those serving in a judicial capacity must be sensitive, not only to actual bias, but also should avoid even the appearance of bias. Courts have recognized that "the mere potential for bias or the appearance of non-objectivity may be sufficient to constitute a violation" of due process. *Kuszyk,* 834 A.2d at 665. However, if a tribunal member believes that he or she is capable of hearing the case fairly, his or her decision not to withdraw will ordinarily be upheld on appeal absent a demonstration of actual "bias, prejudice, capricious disbelief or prejudgment." *Christman v. Zoning Hearing Board of the Township of Windsor,* 854 A.2d 629, 633 (Pa. Commw. 2004).

Generally, "a municipal officer should disqualify himself [or herself] from any proceeding in which he [or

she] has a personal or pecuniary interest that is immediate or direct." *Amerikohl Mining Inc. v. Zoning Hearing Board of Wharton Township,* 142 Pa. Commw. 249, 257, 597 A.2d 219, 222 (1991). Appellate opinions have found recusal warranted when a member of the hearing board participates as an advocate or witness,[3] publicly expresses predisposition,[4] or has a fiduciary relationship with a party in interest.[5] Based on the foregoing authority, it is clear that a claim of bias against a member of a board, if properly raised, is an appropriate area of inquiry for consideration by the court of common pleas on an appeal of the board's decision. I must, therefore, address the issue of waiver raised by the board and intervenors.

The issue of waiver raised by the board and intervenors is not waiver in its purest sense. It is undeniable that Liberty Development requested the chairman to recuse himself prior to consummation of the evidentiary record. A copy of the letter forwarded to the chairman by Liberty Development was made part of the record in this matter, without objection, as applicant's exhibit no. 12. The letter is rather thorough and outlines a number of potential issues which might, depending on the eviden-

3. *Thornbury Township Board of Supervisors v. W.D.D. Inc.,* 119 Pa. Commw. 74, 79, 546 A.2d 744, 747 (1988) (recusal necessary on applications before the board of supervisors where supervisor appeared before township zoning hearing board as a private citizen and advocated against application).

4. *Prin v. The Council of the Municipality of Monroeville,* 165 Pa. Commw. 519, 523, 645 A.2d 450, 452 (1994) (council member is disqualified after publicly expressing his predisposition against the project).

5. *Borough of Youngsville v. Zoning Hearing Board,* 69 Pa. Commw. 282, 289, 450 A.2d 1086, 1091 (1982) (board member improperly failed to recuse himself despite the fact that he was employed by the applicant and presented testimony on the applicant's behalf).

tiary record, require recusal. Accordingly, I find that the issue was properly raised before the board.

The board and intervenors do not strenuously oppose this conclusion; rather, they argue that Liberty Development failed to develop the evidentiary record despite having the opportunity to do so. They suggest that Liberty Development cannot attempt to supplement the record for the first time while on appeal to this court since Liberty Development was given the opportunity before the board to be fully heard and offer whatever testimony they deemed appropriate on this issue. They reason that the failure to develop an evidentiary record before the board has, in essence, resulted in a waiver of the claim of bias. Liberty Development counters this argument by asserting that, once the chairman chose to participate in the hearing despite Liberty Development's request for recusal, it would have been a fruitless exercise to develop the facts concerning recusal before that same board. The question before the court, therefore, is to what extent must a complaining party develop the issue of bias, before the tribunal where recusal is sought, in order to preserve the issue for appeal.

The precise procedure for seeking the recusal of a board member in a land use proceeding has not been specifically delineated by our appellate courts. Guidance on this issue, however, is available in appellate decisions discussing the recusal of a trial judge in court proceedings. Applicable law in this area was first enunciated by our Supreme Court in *Reilly by Reilly v. SEPTA*, 507 Pa. 204, 489 A.2d 1291 (1985):

"The proper practice on a plea of prejudice is to address an application by petition to the judge before whom the proceedings are being tried. He may determine the

question in the first instance, and ordinarily his disposition of it will not be disturbed unless there is an abuse of discretion.

"Due consideration should be given by him to the fact that the administration of justice should be beyond the appearance of unfairness. . . . If the judge feels that he can hear and dispose of the case fairly and without prejudice, his decision will be final unless there is an abuse of discretion." *Reilly,* 507 Pa. at 220-21, 489 A.2d at 1299 (quoting *Crawford's Estate,* 307 Pa. 102, 108, 160 A. 585, 587 (1932)). Later in its opinion, the *Reilly* court clarified the procedure a party should follow to raise recusal:

"It is incumbent upon the proponent of a disqualification motion to allege facts tending to show bias, interest or other disqualifying events, and it is the duty of the judge to decide whether he feels he can hear and dispose of the case fairly and without prejudice because we recognize that our judges are honorable, fair and competent. Once this decision is made, it is final and the cause must proceed. The propriety of this decision is grounded in abuse of discretion and is preserved as any other assignment of error, should the objecting party find it necessary to appeal following the conclusion of the cause." *Id.* at 221-22, 489 A.2d at 1300.

On the same day that the Supreme Court issued the *Reilly* decision, they elaborated on the issue of recusal in *Municipal Publications Inc. v. Court of Common Pleas of Philadelphia County,* 507 Pa. 194, 489 A.2d 1286 (1985). *Municipal Publications Inc.,* 507 Pa. at 202, 489 A.2d at 1290. While *Reilly* set forth the procedure to initiate an issue of recusal, *Municipal Publications Inc.* set forth the test for determining when an evidentiary hearing is necessary:

"[W]here fabricated, frivolous or scurrilous charges are raised against the presiding judge during the course of the proceeding, the court may summarily dismiss those objections without hearing where the judge is satisfied that the complaint is wholly without foundation. In such case, the complaining party may assign the accusation as a basis for post-trial relief and, if necessary, a record can be developed at that stage and in that context. Where, as here, a judge concludes that the allegations justify an evidentiary hearing in which he will testify, it then becomes incumbent upon that judge to step aside for the appointment of another judge to hear and rule upon the issue of disqualification." *Id.*

Finally, it is important to note that the *Reilly* court, recognizing that "[w]aiver is indispensable to the orderly functioning of our judicial process," concluded that issues relating to recusal are waived, absent a showing of after-discovered evidence, if not raised prior to the entry of a verdict. *Reilly,* 507 Pa. at 223, 489 A.2d at 1300.

A reading of these cases, as well as subsequent case law interpreting these opinions, indicates that the Supreme Court has mandated a number of rules concerning recusal matters:

(1) The issue of recusal must be raised to the tribunal hearing the matter by petition prior to the resolution of the issue at controversy;

(2) The petition must contain sufficient factual allegations so that the tribunal may intelligently consider the issue;

(3) If the allegations in the petition are facially insufficient or if the judge feels he can hear and dispose of the case fairly, he may deny the petition without a hearing.

In such case, the issue may be explored on appeal subject to an abuse of discretion standard;

(4) If the tribunal concludes, after considering the allegations in the petition, that an evidentiary hearing is necessary, the tribunal should step aside so that another tribunal may be appointed to rule upon the issue of disqualification; and

(5) If the allegations justifying recusal are not raised prior to the disposition of the underlying dispute, the recusal claim is waived, absent the application of the after-discovered evidence rule.

It is noteworthy that I have failed to find any appellate authority requiring the factual record to be fully developed in order to preserve recusal issues for appellate review.

The procedure enunciated by the Supreme Court concerning recusal does not conflict with appellate authority regarding opening the record for the presentation of additional evidence in a land use appeal. Rather, both exist to present an orderly and judicially economic procedural structure. For example, if a decision to deny recusal is entered by the tribunal, the issue is decided and properly preserved for appeal. Under such circumstances, the tribunal has determined that the allegations are insufficient to justify recusal and, therefore, further presentation of evidence on the matter is unnecessary. The denial of a motion to recuse operates, in effect, as a denial of the opportunity to further develop the evidentiary record. To hold otherwise would lead to a number of absurd results.

For instance, requiring a moving party to develop an evidentiary record in support of allegations, which the

tribunal has facially determined to be insufficient to justify recusal, results in nothing more than a waste of judicial resources. Additionally, since the board of supervisors, in a land use matter, is the fact-finder with exclusive province over matters of credibility and weight to be afforded the evidence, *Heritage Building Group Inc. v. Bedminster Township Board of Supervisors,* 742 A.2d 708, 710 (Pa. Commw. 1999), the development of an evidentiary record before the board places the member whose recusal is sought in the position of making factual determinations concerning his own alleged bias. It takes little imagination to envision the futility of such a process. This futility is only magnified in circumstances where the development of the factual record requires calling the allegedly-biased member of the tribunal as a witness. In such a circumstance, the person whose recusal is sought not only has personal knowledge of the disputed facts, but is put in a position to rule on objections to his own testimony and assess his own credibility in light of conflicting evidence. It is precisely this danger that the Supreme Court recognized in requiring that credible allegations of bias be heard in an evidentiary hearing before a different body. See *Municipal Publications Inc.,* 507 Pa. at 202, 489 A.2d at 1290.

The board and intervenors suggest, contrary to our Supreme Court's instruction, that the chairman should have been called as a witness in order to preserve the recusal issue. However, I have been unable to find any such requirement in any statute or opinion. While it is true that a number of Commonwealth Court cases have included a factual record wherein examination of the party for whom recusal was sought occurred at the time of the land use hearing, those cases neither expressed an

opinion as to the propriety of such a procedure nor imposed such a requirement.

In *Caln Nether Co.,* cited above, the Commonwealth considered the propriety of two township supervisors who refused to recuse themselves from a land use hearing because they resided in a residential development close to the property at issue. *Caln Nether Co.,* 840 A.2d at 496-97. Apparently, the factual issue before the Commonwealth Court was developed through questions asked to each supervisor prior to the commencement of the hearings. *Id.* at 496. Without commenting on the procedure before the board, the Commonwealth Court relied on prior case law to conclude that the landowner failed to produce evidence that the supervisors exhibited bias. *Id.* at 497.

Similarly, in *Christman v. Zoning Hearing Bd.,* 854 A.2d 629 (Pa. Commw. 2004), the Commonwealth Court upheld the decision of zoning hearing board members not to recuse themselves even though they owned property in an area affected by a zoning amendment. *Christman,* 854 A.2d at 634. Once again, the factual record revealed that the zoning hearing board members were questioned concerning their bias at the time of the zoning board hearing. *Id.* However, the Commonwealth Court expressed no opinion as to whether such a procedure is acceptable.

Significantly, both *Caln Nether Co.,* cited above, and *Christman* involved tangential relationships between the tribunal member and the litigation, without evidence of bias, prejudice, capricious disbelief, or prejudgment. I find this significant because the factual matters at issue involved facts that were readily ascertainable, *i.e.,* the ownership and location of property. As explained below,

the current allegations in support of the recusal are not based upon tangential relationships, but rather are claims of actual bias and prejudgment. Under these circumstances, much more substantive testimony by the respective board member is necessary. I conclude, therefore, that the cases cited by the board and intervenors neither require nor suggest that the only way that Liberty Development may avoid waiver is by conducting a full evidentiary hearing on the issue of bias before the very person whose recusal is sought.

Support for this interpretation is found in the recent Superior Court case of *Rohm & Haas Co. v. Continental Casualty Co.,* 732 A.2d 1236 (Pa. Super. 1999). In *Rohm & Haas Co.,* the Superior Court considered whether a judge's recusal was necessary based upon post-trial remarks made to a jury. *Rohm,* 732 A.2d at 1247. An evidentiary hearing was not conducted before the lower court because the trial judge indicated that he was "able to proceed with the litigation in a fair and unbiased manner." *Id.* at 1260. After reviewing the allegations in the motion to recuse, the Superior Court found that,

"[I]t [was] obvious that the court should have provided the parties with a hearing on the recusal motion so that the facts could be explored and an informed decision made. The recusal motion clearly stated facts which would, if proven, call into question the impartiality of the court to continue in the proceeding." *Id.* at 1261.

The Superior Court further recognized that the trial judge "would, *under the proffered facts,* have almost certainly been a witness himself." *Id.* at 1262. (emphasis added) Moreover, the *Rohm* court noted that "it would be appropriate for the trial judge to step aside for the appointment of another judge to conduct the hearing."

*Id.* (footnote omitted) This opinion exemplifies that appellate review is triggered where allegations of bias are alleged in petitions seeking recusal regardless of whether a factual hearing is held before the tribunal in question.

I recognize that the authority cited above has arisen in judicial proceedings where the matter may be readily assigned to another judge for consideration of the bias issue. I also recognize the threshold, which I discussed above, that must be established prior to a court's acceptance of additional testimony on appeal in a land use matter. I find, however, that those distinctions are immaterial in light of the procedures mandated by the Supreme Court. If a petition for recusal is filed and the tribunal reasonably determines that the request for recusal was fabricated, frivolous or scurrilous, the petition may be summarily dismissed and the issue is thereafter preserved for appellate consideration. *Municipal Publications Inc.,* 507 Pa. at 202, 489 A.2d at 1290. If the petition has merit, recusal is the appropriate response. If the petition is of arguable merit and additional testimony is necessary, including the testimony of the member or members at issue, the testimony may be presented, upon petition of either party, before another tribunal. In land use appeals, that tribunal is the court of common pleas.

Interestingly, appellate courts have instructed that the court of common pleas' acceptance of additional evidence related solely to the issue of a board member's bias "is not the type of additional evidence that requires the trial court under . . . the MPC to make its own findings of fact on the underlying merits." See *Amerikhol Mining Inc.,* 142 Pa. Commw. at 256, 597 A.2d at 222. This ruling, in essence, provides aggrieved parties with a procedural vehicle to explore and develop factual issues concerning

recusal before the court of common pleas without usurping the role of the board in considering the merits of the land use matters.

In reaching this conclusion, it is important to focus on the issue before the court. It is neither this court's right, nor its obligation, to set forth the appropriate procedure when addressing issues of recusal before an agency board. That issue is properly left to the state legislature and appellate courts. Rather, I am concerned only with the issue of what satisfies the minimal threshold to preserve an issue of bias for appellate consideration. In this regard, I find that Liberty Development has satisfied the minimum requirements enunciated by our Supreme Court in order to preserve the issue for appellate review.[6]

Before resolving the issue of whether the presentation of additional evidence is appropriate, I will conduct a cursory review of the bias allegations, as raised before the board, in order to determine whether the chairman's decision not to recuse himself constituted an abuse of discretion. If the allegations raised by Liberty Development are insufficient or frivolous, they may be summarily dismissed by the chairman. See *Municipal Publications* cited above. In such an instance, opening the record to present additional evidence is unnecessary.

---

6. The board cites *Amerikohl,* cited above, for the proposition that Liberty Development's failure to develop a factual record before the board constitutes waiver. I do not read *Amerikohl* as support for that proposition. In *Amerikohl,* the landowner not only failed to establish a factual record before the board, but, importantly, it appears from a reading of the opinion that the issue of recusal was never raised in any manner before the board. Accordingly, *Amerikohl* actually supports the reasoning in this opinion, and that of the Supreme Court, which mandates that specific allegations of a bias claim must be raised before the tribunal at issue or waiver results.

Liberty Development, in its request for recusal, raised several circumstances which it believes indicates actual bias on the part of the chairman. Liberty Development notes that its application for approval of a planned residential development (PRD) was initially considered during an election year in which board membership was open to election. While the application was pending, the composition of the board changed because a new member, who subsequently became chairman of the board, defeated an incumbent.[7] All of Liberty Development's allegations of bias relate to the new member's (chairman) actions during the course of the election which Liberty Development suggests indicate prejudgment of its tentative plan. The allegations raised by Liberty Development consist of the following:

(1) The chairman was a founding member of the organization "Save Our Liberty," which ultimately was granted party status before the board and actively opposed the tentative plan application;[8]

---

7. The record indicates that Liberty Development's application for tentative review of their plan was filed on September 29, 2003. A hearing on the application commenced on November 24, 2003, and spanned eight different days through January 14, 2004. A final decision by the board was entered on March 16, 2004. The record further indicates that board membership consisted of Leonard Sites, chairman, Charles Alexander and John Miller through December 31, 2003. Five of the eight hearing dates were held prior to December 31, 2003. During the three remaining hearing dates, the board consisted of Paul Harner, chairman, Leonard Sites and John Miller. The board's decision denying the PRD tentative plan consisted of votes in favor of the denial by Chairman Harner and Supervisor Miller. Supervisor Sites voted for approval of the plan.

8. The organization, "Save Our Liberty," also petitioned this court to be granted intervenor status. The petition was denied by order of court dated September 27, 2004.

(2) At a citizens meeting held on August 27, 2003, the chairman presented himself as representing "Save Our Liberty," and solicited memberships and donations for the payment of legal fees and other expenses to oppose Liberty Development's application. Additionally, Liberty Development claims that the chairman is listed on the agenda under the heading "Call to Action" and that, during the meeting, he expressed his personal view that Liberty Development's PRD would be detrimental to the quality of life in Liberty Township and that all citizens should oppose the plan;

(3) The chairman, on election day, solicited voters to support his write-in candidacy by claiming that he would vote to reject Liberty Development's application; and

(4) At a public meeting on November 5, 2003, after the chairman had won the election, but prior to becoming a board member, the chairman indicated that the reason he won the election was his position against "the PRD." When asked for clarification as to whether the chairman was against PRDs, or against the Wormald plan,[9] it is alleged that the chairman stated "PRDs and PRDs similar to the Wormald plan and including the Wormald plan."

As indicated above, Pennsylvania appellate courts have found recusal to be necessary in circumstances where a member of the tribunal publicly expressed a predisposition against a project or took an advocacy role against the matter at issue. See *Prin,* cited above, and *Thornbury*

---

9. Liberty Development's application for tentative approval has been referred to consistently by the parties as the Wormald plan, apparently in reference to Edward E. Wormald, general manager of Liberty Development Company LLC, and signatory on the application.

*Township Board of Supervisors,* cited above. Under the proffered facts, it appears that there is a substantial issue as to the chairman's ability to preside impartially. It is equally clear that the chairman will almost certainly be a witness. It would appear, therefore, that an evidentiary hearing on this issue is necessary. However, before granting Liberty Development's request to present additional testimony, I must consider the township's argument that an additional evidentiary hearing is unnecessary since, even if bias is found, the results of the board's action remain the same.

In support of their argument, the board cites *Kuszyk,* cited above. In *Kuszyk,* the Commonwealth Court was faced with the issue of whether a zoning board member who was the husband of a township supervisor was required to recuse himself in considering the validity of a cease-and-desist order issued against a landowner by decision of the supervisors. *Kuszyk,* 834 A.2d at 662. Failing to find any evidence of actual bias, the Commonwealth Court held that the tangential evidence of the marital relationship was insufficient to justify recusal. *Id.* at 665. In dicta, the Commonwealth panel noted that, even assuming recusal was appropriate, removal of the disqualified member's vote would still have resulted in a 2-2 decision. *Id.* The court concluded that, since a tie vote acts as a denial of the requested relief, error in resolving the recusal petition, if any, was harmless. *Id.*

In reading the line of cases cited as authority, it is interesting to note that *Kuszyk* is the first case where a court applied this rule of law to an appeal from a land use decision by an agency board. While it is true that earlier cases have concluded that a tie vote by an administrative body equates to a denial, the issue in those cases was

presented in the context of whether a tie vote constituted a lack of action for a "deemed approval" in a writ of mandamus action.[10] I find the history of this legal proposition intriguing in light of another opinion from the Commonwealth Court which seems to indicate a contrary result. In *Borough of Youngsville,* cited above, the Commonwealth Court found that a zoning hearing board member improperly failed to disqualify himself in a circumstance where the board member, as an employee of the applicant, participated in earlier proceedings involving the land use application. *Borough of Youngsville,* 69 Pa. Commw. at 289, 450 A.2d at 1091. After noting that the board would have produced a 1-1 vote if the board member had not participated in the hearing, the Commonwealth Court directed the court of common pleas to "take such evidence as the parties wish to introduce and make findings of fact and conclusions of law" in consideration of the application. *Id.* at 292, 450 A.2d at 1092. In light of these contrary events, I will defer the resolution of this issue unless and until there is a finding of actual bias following the presentation of additional evidence.

Because the integrity of our legal process is at issue, I grant Liberty Development's request to present additional testimony on the important issue of bias.[11] In reaching

10. It is well settled in this state that a municipality's failure to comply with the time provisions set forth in the MPC will result in a deemed approval of a land use application. *Coretsky v. Board of Commissioners of Butler Township,* 520 Pa. 513, 517, 555 A.2d 72, 74 (1993).

11. The board cites 53 P.S. §65603 which reads that "A member of the board shall not be disqualified from voting on any issue before the board solely because the member has previously expressed an opinion

this decision, I am mindful of the eloquent words of Justice Papadakos in *Reilly,* cited above:

"Questions concerning the fairness, impartiality, or bias of the [tribunal] always affect the administration of justice and can cloak the whole system of judicature with suspicion and distrust. Because recusal requests call into question our ability to mediate fairly, they raise important issues in which the public is concerned. If our [tribunals] are perceived to be unfair and biased, our future ability to adjudicate the public's grievances and wrongs will be threatened, because we all lose the one thing that brings litigants into our halls of justice—their trust. Without the people's trust that our decisions are made without malice, ill will, bias, personal interest or motive for or against those submitting to our jurisdiction, our whole system of judicature will crumble. Accordingly, when challenges are made concerning the necessity for the recusal of a [member of a tribunal], an important public question is being addressed which we, as responsible representatives of the people, must resolve." *Reilly,* 507 Pa. at 224-25, 489 A.2d at 1301.

Liberty Development also seeks to present additional evidence regarding the legal effect of the 1985 amendment to the Liberty Township Zoning Ordinance. In de-

---

on the issue in either an official or unofficial capacity." 53 P.S. §65603. The board concludes that the chairman's actions, even if true, are not a basis for recusal under the protections of this section. On the other hand, Liberty Development suggests that, in considering its application for tentative approval of the PRD, the board was acting in its adjudicative capacity and is, thus, subject to greater scrutiny. See *North Point Breeze Coalition v. Pittsburgh,* 60 Pa. Commw. 298, 304, 431 A.2d 398, 401 (1981). I will defer the resolution of this specific issue until additional testimony is taken.

nying Liberty Development's application for tentative approval, the board concluded that PRDs are not permitted under the Liberty Township Zoning Ordinance. In reviewing the original Liberty Township Zoning Ordinance, adopted on April 3, 1984, the board found that PRDs were permitted only as "special uses." Since a 1985 amendment to the zoning ordinance repealed "all special uses under the zoning ordinance . . . ," the board concluded that this language effectively eliminated PRDs from the township's zoning scheme and, thus, eliminated authorization for PRDs within the boundaries of Liberty Township.

Liberty Development seeks to present additional evidence claiming that, since the 1985 amendment issue was not raised by the township until after the hearings were concluded and the record was closed, they were denied the opportunity to address this issue. Liberty Development further argues that the township's acceptance of their PRD application led them to believe that the 1985 amendment was not at issue. Because the record before the court indicates that Liberty Development had sufficient notice of this issue and was provided ample opportunity to present evidence, I deny the request to open the record for this purpose.

A painstaking review of the record indicates that correspondence from the Adams County Office of Planning and Development to the parties, dated December 3, 2003, recommended the denial of Liberty Development's PRD on four different bases. Significantly, the first basis listed by the Adams County Office of Planning and Development is that PRDs are not permitted in the zoning districts affecting the property. Later in the correspondence,

the author, Richard Schmoyer,[12] devotes three paragraphs in support of his conclusion that PRDs are not permitted under the ordinance due to the 1985 amendment.

At the December 22, 2003 hearing, Richard Schmoyer was called to testify as a witness. During his testimony, he indicated that the Adams County Office of Planning and Development recommended the denial of the application based upon, among other things, "some issues that we thought we saw relative to the applicability of the ordinance itself and on completeness of the ordinance itself. . . ." Hearing transcript, p. 600. Later in his testimony, in response to questions concerning the issue of whether PRDs are permitted under the ordinance, Mr. Schmoyer indicated:

"We write zoning ordinances as planners, and we did look at other zoning ordinances in Adams County to see how PRDs were treated. In the other cases where they are permitted, they are permitted in specific districts. In this case, after that amendment eliminated them, we felt based on what we read, it was a question in the minds of the entire staff of whether or not, and I think we did suggest the Township take a serious legal look at this issue." Hearing transcript, p. 678.

The significance of this issue was not lost on the appellant, as evidenced by counsel's attempt during cross-examination to cast doubt on the credibility of Mr. Schmoyer concerning this issue. See Hearing transcript, p. 686, ll. 3-9.

The issue concerning the 1985 amendment was revisited in the January 19, 2004 recommendation from the

_____

12. Richard H. Schmoyer is director of the Adams County Department of Planning and Development.

Liberty Township Planning Commission. In summarizing the planning commission's three-one vote in favor of the denial of the application, the commission noted "review of the zoning ordinance shows no basis for a PRD to be allowed in the zones proposed or any zone in Liberty Township. . . ." Save Our Liberty exhibit 30, p. 4. This comment from the planning commission references the 1985 amendment and states that the commission believed that PRDs were repealed by the 1985 amendment. Counsel for Liberty Development indicated receipt of the report at the January 19, 2004 hearing and, significantly, perhaps in recognition of the substance of the report, called a number of witnesses in order to establish a bias claim against planning commission members. See generally, transcript, pp. 1062-75.

Perhaps the clearest indication of Liberty Development's awareness of this issue is found in the testimony of its expert, Richard N. Coch. In response to questions posed by Liberty Development's counsel, the following exchange occurred:

"Q: Please refer to part IV(B) of the Adams County comments (at page 10) where it is suggested that PRDs are not permitted uses under the township's zoning ordinance. Please state your view concerning these comments.

"A: Adams County planning, in their previous comments applicable to the Community of Liberty PRD, were unaware of the May 1985 amendments to the zoning ordinance. Those amendments eliminated special uses, including the PRD special use within the GU district. Adams County planning now suggests that this amendment eliminated PRDs as a permitted use within any district in the township. Based upon our experience in deal-

ing with zoning ordinances, including those with PRD provisions, we do not think this to be a reasonable or proper interpretation. Otherwise the entirety of article V of the zoning ordinance setting forth the PRD standards and requirements would be a nullity. It appears to us that, if the township had intended to eliminate PRDs as a permitted use within the township, it would have repealed article V as a part of the 1985 amendment. It is our view that PRDs are allowed within any district of the township so long as the standards and requirements of article V are satisfied, in order to provide innovative design alternatives and to allow for flexible community mixed use development." Exhibit A-7, p. 10.

This exchange reveals not only that Liberty Development was aware of the comments of the Adams County Planning Department, but also that the 1985 amendments, and their effect, were an issue before the board. Liberty Development's argument that it was denied the opportunity to present evidence on this critical issue is not supported by the record. In fact, Liberty Development presented evidence in support of its position that the 1985 amendments did not affect the viability of PRDs in Liberty Township.[13]

---

13. In its brief, Liberty Development suggests that the 1985 amendment did not become an issue until after Chairman Harner took office. Once again, this claim is not supported by the record. The above-referenced testimony of Richard Coch was presented to the board in a hearing held on December 15, 2003, which precedes Mr. Harner's ascension to the board. Interestingly, Mr. Coch's testimony was submitted in a pre-prepared question and answer form, which apparently was taken from a previous application filed, and subsequently withdrawn, by Liberty Development. See transcript, p. 390. Although the record is unclear, the initial application for a tentative plan, called the Community of Liberty, was formally withdrawn sometime prior to November 24, 2003. See transcript, p. 3.

The suggestion that Liberty Development was led to believe that the 1985 amendment was not an issue is simply not credible in light of the record. Rather, Liberty Development's actions and arguments following the close of the evidentiary record clearly reveal its awareness of this issue. Following the close of testimony on January 21, 2004, Liberty Development granted the township an extension in rendering a decision so that each party would have the opportunity to file proposed findings of fact and briefs. The next activity of record occurs on February 23, 2004, when both Liberty Development and Save Our Liberty submitted briefs to the township for consideration. Liberty Development's brief is accompanied by proposed findings of fact and conclusions of law. Since the lengthy briefs of both parties were submitted to the township on the same day, neither Liberty Development nor Save Our Liberty had the benefit of seeing its adversary's arguments. Yet, the second conclusion of law suggested by Liberty Development addresses the issue of whether PRDs are permitted in the township.[14] Liberty Development supports this proposed conclusion of law with its brief, which sets forth argument and supporting case law concerning the effect of the 1985 amendment. In light of this record, it cannot be credibly argued that the viability of PRDs in Liberty Township was a non-issue. Although Liberty Development may have miscalculated the significance of the issue, its argument claiming that it was surprised is meritless.

---

14. Liberty Development's proposed findings of fact and conclusion of law no. 2 reads: "At the time the Liberty Valley PRD application was filed with the township, article V of the zoning ordinance permitted planned residential developments in all zoning districts in the township."

Throughout the various pleadings in this matter,[15] Liberty Development proffers a number of items which it seeks to present as additional evidence. After reviewing each of those items, it is apparent that practically all of those items were known and available to Liberty Development prior to the close of the evidentiary record before the board.[16] Under these circumstances, I am unable to find that Liberty Development was refused the opportunity to be fully heard or that relevant testimony was excluded. See *Caln Nether Co.,* cited above. The record itself leads to a contrary conclusion. Testimony was presented over eight different days involving more than 20 different witnesses. Additionally, the board took comment from a number of citizens. There is no indication

---

15. Liberty Development has filed a notice of appeal, with 13 exhibits attached; a motion to present additional evidence; and a brief in support of motion to present additional evidence.

16. Liberty Development also suggests that a resolution passed by the board in another land use matter on March 2, 2004, and comments in a local newspaper concerning that resolution and attributed to members of the board, occurred subsequent to closure of the record. Although interesting, they provide little insight to the issues before the court. Obviously, they are not indicative of actions by township officials which may have misled, or caused reliance on the part of Liberty Development, since the comments post-date all application proceedings before the board. Moreover, the evidence does not indicate inconsistent results concerning the same issue. Rather, this evidence appears to reflect the board's struggle with complicated legal issues concerning two separate large-scale land development plans. Although not part of the record in this matter, there are various references throughout this proceeding to another PRD plan in Liberty Township submitted by Roy and Edith Crum. After the board rendered a decision on the Crum application, the matter was appealed to the Adams County Court of Common Pleas, 04-S-352. By order of court dated June 29, 2004, all parties to this litigation were permitted to intervene in the Crum appeal.

that relevant testimony from any witness was excluded by the board. Although public comment was limited, the parties to the application were granted unlimited time to present testimony and other evidence.[17] I agree with the township; if error occurred, it was the result of the township permitting too much testimony.

In reaching this conclusion, I am mindful that the denial of Liberty Development's petition to submit additional evidence on this issue may very well preclude, or substantially hinder, its ability to pursue theories challenging the board's finding that PRDs are not permitted under the Liberty Township Zoning Ordinance.[18] However, the litigants have been given their opportunity to present their cause. Where there is an opportunity to raise an issue or to present evidence before a municipal body, and a party fails to do so, that party has waived the right to do so at a later date. *Mack v. Zoning Hearing Board of Plainfield Township,* 126 Pa. Commw. 80, 85, 558 A.2d 616, 618 (1989). Permitting the presentation of new theories or additional evidence following the entry of a decision by a municipal body exposes litigants to the uncertainty of collateral attack and is contrary to the successful administration of justice.

---

17. At the conclusion of the final hearing on January 19, 2004, the township solicitor, Walton Davis, Esquire, leaves the applicants the option of closing the record or presenting additional evidence, as indicated by the following exchange:

"Mr. Davis: Anything else or close these proceedings out?

"Mr. Zwally: I think it appropriate to close the proceedings. I would like to have a brief off-the-record discussion before we do." Transcript, p. 1220.

18. Liberty Development argues in its brief that the township should be estopped from concluding that PRDs are not authorized under the township ordinance. Its motion to present additional evidence seeks to admit testimony and evidence in support of this claim.

For the foregoing reasons, the attached order is entered.

## ORDER

And now, June 24, 2005, the plaintiff's motion to present additional evidence concerning the legal effect of the 1985 amendment to the zoning ordinance is denied. The plaintiff's motion to present additional evidence concerning bias is granted. Pursuant to *Amerikohl Mining Inc. v. Zoning Hearing Board of Wharton Township*, 142 Pa. Commw. 249, 597 A.2d 219 (1991), this court's decision to accept additional evidence of bias will not, in and of itself, change the standard of review of the board of supervisors' decision. An evidentiary hearing for the admission of testimony permitted by this order will be scheduled upon praecipe of any party.